# SUPREME JUDICIAL COURT,

FOR THE

## WESTERN DISTRICT.

## 1859.

## COUNTY OF FRANKLIN.

WILLIAM GOULD *versus* YORK COUNTY MUTUAL FIRE INSUR-
ANCE COMPANY.

Where A permitted his son B to use his name in buying and selling goods, and the business was transacted in the name of A & B, the goods being in fact wholly owned by B, this does not so affect the legal rights of other parties as to render void a policy of insurance effected ʳon the goods in the name of B.

Where it is provided in the application for insurance, which is made a part of the policy, that any concealment of the condition or character of the property will make the policy void, if the applicant represented the property free from incumbrance, when there was at the time a mortgage upon a part of it, this was a breach of the contract, and the policy was void, and this, whether the false representation were by mistake or design.

And where a policy of insurance covered a store and the goods in it, and the property was represented to be unincumbered, when, in fact, the store was under a mortgage, the policy is void as to the goods as well as the store, the contract being entire, and the incumbrance affecting the company's lien for the payment of the premium note and assessments.

Where an applicant for insurance represented that no cotton or woollen waste or rags were kept in or near the property to be insured, and it appeared that at the time of the fire 1500 pounds of paper rags were in the store, this does not avoid the policy, it not being shown that the representation was untrue when made, and neither the policy, charter or by-laws of the company providing that the keeping of such articles shall invalidate the insurance.

ASSUMPSIT on a policy of insurance for three years, in favor of the plaintiff, upon a store and goods in Wilton, dated Dec. 30, 1856. By the terms of the policy, the application and description of the property was made a part of the contract. Amongst other inquiries contained in the application were the following :—

" Is cotton or woollen waste, or rags, kept in or near the property to be insured ?" Answer, " No."

" If the property is incumbered, state for how much and to whom. State the true title and interest." Answer, " None."

The store and goods were burned Oct. 24, 1857. The plaintiff gave notice to the defendants, and furnished them a schedule of the property lost, and complied with the requirements of law and of the policy. The writ was dated May 1, 1858.

It appeared in evidence, that Benjamin Gould, the father of the plaintiff, prior to April, 1856, kept and sold goods in the store in question, using plaintiff's name with his own, by consent; that, at that time, the plaintiff bought the stock in trade, and thenceforward, was the sole owner of the goods until they were burned, using his father's name by his consent, and doing business in the name of B. & W. Gould.

The defendants introduced a mortgage to William Hall, dated Dec. 17, 1856, conveying the store and the lot on which it stood, together with a dwellinghouse, to secure a debt to Hall, a part of which remained unpaid at the time of the fire.

The plaintiff testified, that he signed the mortgage without reading it, and was not aware that it embraced the store, until, on the day preceding the trial, he discovered it by examining the record. The defendant introduced testimony tending to prove that the plaintiff knew the contents of the mortgage when he executed it.

The plaintiff testified that, at the time of the fire, he had fifteen hundred pounds of paper rags in the store, which he had taken in from time to time.

The defendants' counsel requested the Court, HATHAWAY, J., presiding, to instruct the jury that, if the goods insured

were bought in the name of B. & W. Gould, and partly on credit, it would constitute such a fraud or breach of warranty as would avoid the policy; and that purchasing goods in the name of the firm made them partnership goods. These instructions were not given; but the jury were instructed that the fact that the plaintiff used his father's name, by his consent, in purchasing goods, they being, in fact, the sole property of the plaintiff, would not affect the legal rights of the parties to this suit.

The plaintiff's counsel requested the Court to instruct the jury, that, if they were satisfied that the store insured, and the land connected therewith, were included in the mortgage to Hall by mistake, and that the plaintiff had no knowledge or information of their having been so included until the present term of Court, the existence of the incumbrance would not necessarily prevent the plaintiff recovering the amount insured on the store. The Court did not so instruct the jury, but instructed them, that, if the facts were as contended for by the plaintiff, he could not recover any thing for the loss of the store, but might recover for the goods. If, however, the false representation, with regard to the mortgage, was made fraudulently, the whole policy would be void, and he could recover nothing for either store or goods.

The defendants requested the Court to instruct the jury, that, if rags were kept in the store insured, and containing the other property insured, during the time embraced in the policy, or any portion of the time, the policy was void. These instructions the Court declined giving.

The verdict was for the plaintiff for the amount insured on the goods only.

The defendants filed exceptions.

*John N. Goodwin,* in support of the exceptions.

The evidence shows that B. Gould and the plaintiff were partners, and the goods partnership property. The Act of incorporation, by-laws and application, require a full statement of the condition of the property to be insured, and that the

true title to it shall be stated. The plaintiff represented the property to be owned by himself, and unincumbered. The interrogatories in the application were carefully framed, not to ascertain the secret understanding between the applicant and another, but in whom the title was openly and publicly represented to be, and what rights the company would have in enforcing assessments. If the goods were bought and the business carried on in the name of B. & W. Gould, this constitutes them partners, and the property partnership property, as far as regards all others except themselves. In case of insolvency, the partnership creditors would take the property, and the defendants, having a claim against W. Gould only, would have no remedy.

A false representation affecting the title to the property is material, and avoids the policy. *Davenport* v. *N. E. Mut. Fire Ins. Co.*, 6 Cush., 340; *Wilbur* v. *Bowditch Mut. Fire Ins. Co.*, 10 Cush., 446. Such a representation makes the policy void, although not made with the knowledge of its falsity, nor with intent to deceive. *Smith* v. *Bowditch Co.*, 6 Cush., 448; *Vose* v. *Eagle Ins. Co.*, 6 Cush., 42; *Barrett* v. *Union Ins. Co.*, 7 Cush., 175.

Any incumbrance or defect of title which deprives the company of its lien renders the policy void. *Battles* v. *York. Co. Mut. Fire Ins. Co.*, 41 Maine, 208. No lien could attach to the goods so long as the firm owed debts.

The instruction that, if the plaintiff made the false representation as to the incumbrance on the store, unintentionally and in good faith, he would be entitled to recover the insurance on the goods, was erroneous. Although the store and goods were described and valued separately, yet one deposit note was given on the whole insurance. Assessments made, must be made on the note as a whole, and not on each article insured. The lien is on every article insured for the whole assessment. Act of incorporation, § 7. The store and goods were equally liable. Misrepresentation as to the title of either affects the collection of assessments on the whole policy. Personal property is constantly changing;

hence the lien on the real estate is the principal security. A false representation, as to the incumbrance on the real estate, avoids the policy as to both real and personal. *Brown* v. *People's Ins. Co.*, 11 Cush., 280. In this case, it was admitted that the misrepresentations made were not made wilfully or with intent to defraud.

The plaintiff represented that rags were not kept in or near the property to be insured; and the application stated expressly that property containing or contiguous to manufacturing risks would "not be insured in this class at any rate." Underwriters class rags with cotton and woollen waste, as manufacturing risks. If, as the plaintiff testifies, he had 1500 pounds of rags in his store, he had wilfully violated the conditions of his policy, and it was for that reason void.

If, in applications for insurance against fire, whatever is material to the risk is not correctly set forth, the policy will be void. *Marshall* v. *Ins. Co.*, 7 Foster, 157.

*John S. Abbott, contra.*

The opinion of the Court was drawn up by

Tenney, C. J.— The goods covered by the policy were owned by Benjamin Gould, the father of the plaintiff, prior to April, 1856, when they were purchased by the latter, and were entirely his property. While they were owned by the father, according to the evidence, the business was done in the name of B. & W. Gould, the son consenting that his name should be so used. After the purchase, goods were bought and business carried on by the son in the name of B. & W. Gould, the father consenting thereto. The case contains no evidence that any part of the goods was purchased on credit. The Judge was requested to instruct the jury, that, if the goods were bought in the name of B. & W. Gould, and partly on credit, it would constitute such a fraud, or breach of warranty, as would avoid the policy; that purchasing the goods in the name of the firm constitutes them partnership goods. These instructions were not given; but the jury were in-

structed, if the father authorized the plaintiff to use his name, as he did use it, in the purchase of goods, and the goods were in fact the sole property of the plaintiff, the use of the father's name would not affect the legal rights of the parties. The evidence touching the ownership of the goods is not in the least in conflict with the representations in the application or the terms of the policy; and there is nothing in that evidence which tends to show that the risk of the company was in any degree increased. The instructions requested were properly withheld, and those given upon this point free from error.

The policy refers to the application as part thereof, and it is made subject to the provisions and conditions of the charter and by-laws, and the lien on the interest of the person insured, in any personal property or building covered by the policy, and the land under said building. It is provided, in the application, that any concealment of the condition or character of the property will make the policy void. The 14th interrogatory in the application is, — "If incumbered, state for how much and to whom. State the true title and interest." The answer to this interrogatory is, " None."

It is in evidence that, at the time of the application and the issuing of the policy, there was upon the real estate insured a mortgage, on which there was due the sum of two hundred dollars. This answer was manifestly material and became a warranty by the terms of the contract. *Battles* v. *York Co. Mut. Ins. Co.*, 41 Maine, 208. This was a misrepresentation, and a breach of the contract, and, by the instructions of the Judge, the policy was absolutely void, so far as it referred to and covered the real estate insured. This part of the instructions was correct.

But the jury were further instructed that, if the misrepresentation was made fraudulently, the whole policy was void, and the plaintiff could recover nothing; but, if the representation that the store was free from incumbrance was made inadvertently, in good faith, he believing it to be true, and he had no knowledge to the contrary till the day before the commencement of the trial, then said erroneous representation

would not avoid the policy of insurance upon the goods insured, and that he would be entitled to recover for the goods insured, according to the terms of the agreement, as stated in the policy. Exceptions taken to the latter portion of these last instructions are relied upon.

The company had a lien on the land and the store which contained the goods, and upon the goods themselves, not only for the payment of the note given for the premium, but for the payment of assessments made on account of losses. In the policy and the application, no distinction is made between an incumbrance for a small sum compared with the value of the real estate insured, and a sum which is nearly or quite equal to the whole value, in relation to the question whether the policy is avoided by such misrepresentation. In the latter case, supposed, the company would hold a position far less favorable than in the former, as to the goods insured, as well as to the real estate. In a policy like the one in question, the real estate insured is security for the goods covered by the same policy; and, if the real estate, as owned by the assured, is of little or no value, it can be security for the intended purposes only in proportion to the insurable interest of the applicant.

Is there ground for the distinction made by the Judge, as to the intent with which the misrepresentation was made, in its effect upon the insurance of the goods?

It is immaterial, in regard to misrepresentation in obtaining insurance, whether it is made fraudulently or by mistake or accident, the effect is the same. A policy obtained by misrepresentation is, in legal intendment, no insurance at all; it has no legal effect. *Clark* v. *N. E. Mut. Ins. Co.*, 6 Cush., 342.

In *Carpenter* v. *American Ins. Co.*, 1 Story, 57, Story, J., says, — "A false representation of a material fact is, according to well settled principles, sufficient to avoid a policy of insurance, underwritten on the faith thereof, whether the false representation be by mistake or design." ."The representation, made by an agent in procuring a policy, is equally fatal,

whether made with the knowledge or consent of the principal or not. The ground in each case is the same. The underwriters are deceived. They execute the policy on the faith of statements material to the risk, which turn out to be untrue. The mistake is therefore fatal to the policy, as it goes to the very essence of the contract." The same principle was laid down by Lord MANSFIELD, which has not been denied to be correct. He says,—" Although the suppression should happen through mistake, without any fraudulent intention, yet still, the underwriter is deceived and the policy is void, because the risk run is vastly different from the risk understood and intended to be run at the time of the agreement." *Carter* v. *Boehm,* 3 Burr., 1905, 1909.

The policy was void by reason of the misrepresentation in regard to the incumbrance, irrespective of the question whether it was fraudulent or made through an honest misapprehension of the facts; and, by the terms of the policy, including the application, charter and by-laws, which make a part thereof, it became void. The contract being entire, and one premium note given, the lien for the security of the same was affected by the erroneous answer. *Richardson* v. *Maine Ins. Co.,* decided by this Court in 1859, not yet reported; *Brown* v. *People's Mut. Ins. Co.,* 11 Cush., 280.

The plaintiff testified that, at the time of the fire, some 1500 pounds of paper rags were in the store, which were destroyed; these he had taken in from time to time. The defendants requested the Judge to instruct the jury that, if rags were kept in the store insured, and which contained the other property insured, during the time said property was insured by the defendants, the policy would be thereby avoided. 2. If rags were so kept during any portion of the time the same were insured, it avoids the policy. These instructions were not given.

The 8th question put to the plaintiff, in the application, is, " Is cotton or woollen waste, or rags kept in or near the property to be insured?" The answer is, " None." It does not appear, affirmatively, that this answer was untrue at the time

it was made. And no provision is found in the policy, or the charter and by-laws, that, if such articles shall thereafterwards be kept, the policy shall be avoided.

> *Exceptions sustained,* —
> *Verdict set aside, and*
> *New trial granted.*

RICE, APPLETON, GOODENOW, and DAVIS, JJ., concurred.