ERNESTINE PLATH *vs.* MINNESOTA FARMERS' MUTUAL FIRE INSURANCE ASSOCIATION.

April 6, 1877.

**Fire Insurance—Contract held to be Entire.**—The consideration for the insurance named in the policy was single and entire. The amount of insurance was a gross sum, apportioned upon several distinct items of property, as specified in the policy. *Held,* that the contract of insurance was an entirety, the sole effect of the apportionment being to limit the extent of the insurer's risk, as to each item, to the sum so specified.

**Same—Subsequent Mortgage of Portion of Property.**—When such a policy contains a stipulation avoiding it in case the insured mortgages the property without notifying the secretary, a mortgage of a portion only of the property insured, without such notice, avoids the whole policy.

**Same—Notice of such Mortgage sent to Company by Mail.**—The by-laws and policy required a written notice of the mortgage to be given by the insured to the secretary of the association. *Held,* that, though the service of such notice in the usual manner by mail was sufficient to raise the presumption that it was received by the secretary by due course of mail, it was not conclusive, but could be rebutted by proof of the fact that it was never received. The obligation of the insured was to give the desired information, and, if he adopted any other than personal service, the risk was his.

Action on a policy of insurance whereby the defendant, in consideration that plaintiff had bound herself to abide by the charter and by-laws of defendant, and had paid $1.25, insured the plaintiff for seven years, from January 18, 1875, in the sum of $1,150, against loss or damage by fire, the amount of insurance being apportioned in the policy as follows: On dwelling-house, $150; on household furniture

therein, $50; on carriages, etc., $135; on farming imple-ments, $80; on threshing machine, $500; on Marsh harvester, $175; on seeder, $60. It was alleged in the complaint, and admitted in the answer, that all the property insured was destroyed by fire on May 18, 1875.

Attached to the policy was a copy of the defendant's by-laws, one of which is as follows:

"Whenever any one hereafter insured shall alienate conditionally by mortgage, his policy shall be void, unless he shall make a representation, in writing, to the secretary, stating the amount and to whom mortgaged, who shall have power to give his assent to said mortgage, or to cancel said policy, as he shall judge proper on examination of the same." By the terms of the policy the defendant agrees to make good all loss by fire, etc., provided (among other things) "the said party insured shall abide by the charter, by-laws, rules, and regulations of the said association, now or hereafter in force." The policy also provides that "if the insured  *  *  *  shall mortgage the property, without notifying the secretary, then in every such case the insured shall not be entitled to recover from the association any loss or damage which may occur in or to the property hereby insured, or any part or portion thereof."

In its answer the defendant (among other defences) alleged that, on or about April 16, 1875, the plaintiff duly made and delivered to one Allison a chattel mortgage on the Marsh harvester, threshing machine, and seeder mentioned in the policy, to secure the payment of $299.85, which mortgage was duly filed in the office of the proper town clerk, on April 23, 1875, and that the plaintiff never at any time notified defendant's secretary of such mortgage, nor made any representation in writing, or otherwise, to such secretary, of the existence or amount of such mortgage, or to whom the property described in the policy, or any part thereof, was mortgaged; and that such secretary never gave his assent to such mortgage; and that, by reason of

the execution and delivery of such mortgage, without notice to the secretary, the plaintiff rendered the policy null and void, as provided by the terms and conditions of the policy and by-laws.

. At the trial in the district court for Brown county, before *Hanscome,* J., it appeared from the plaintiff's testimony that the mortgage was executed and delivered as alleged in the answer, and that the amount secured thereby was due from plaintiff to the mortgagee.

The evidence offered to show notice by mail to the company, and the charge of the court in regard to the sufficiency of a notice by mail, (which were properly excepted to by defendant,) are stated in the opinion. The court further instructed the jury, under exception by defendant, that, "if the jury find that plaintiff mortgaged any part of the property insured by the policy in question, and did not give notice to the secretary of the defendant, the policy is void as to the property so mortgaged, but is valid as to all the property not mortgaged, and the plaintiff may recover *pro tanto.*" The jury found a verdict for plaintiff for $500.

A case having been settled, and defendant having moved for a new trial (1) on the ground that the verdict was not justified by the evidence, and was contrary to law; and (2) for error of law, occurring at the trial, and excepted to by the defendant, it was stipulated that plaintiff should consent that judgment be entered in her favor for $350, and that she should release all further claim under the verdict; and that, in consideration thereof, the defendant should abandon the first ground of its motion for a new trial. The motion for a new trial was thereupon heard and denied, and the defendant appealed.

*Shaw & Levi* and *B. F. Webber,* for appellant.

*Cox, Gronlund & Matten* and *S. L. Pierce,* for respondent.

CORNELL, J. The policy declared on in this case shows that the consideration paid therefor by plaintiff was single and entire. The amount of insurance secured thereby was

the gross sum of $1,150, distributed upon several distinct items of property, as therein specifically stated. It is well settled, by a uniform current of authority, that a contract of insurance of this character is an entirety, and indivisible, the sole effect of the apportionment of the amount of insurance upon the separate and distinct items of property named in the policy being to limit the extent of the insurer's risk, as to each such item, to the sum so specified. 2 Pars. Con. (5th ed.) 519; *Gottsman* v. *Penn. Ins. Co.*, 56 Pa. St. 210; *Friesmuth* v. *Agawam Mut. Fire Ins. Co.*, 10 Cush. 587; *Brown* v. *People's Mut. Ins. Co.*, 11 Cush. 280; *Lee* v. *Howard Fire Ins. Co.*, 3 Gray, 583; *Kimball* v. *Howard Fire Ins. Co.*, 8 Gray, 33; *Lovejoy* v. *Augusta Mut. Fire Ins. Co.*, 45 Me. 472; *Richardson* v. *Maine Ins. Co.*, 46 Me. 394; *Gould* v. *York Mut. Fire Ins. Co.*, 47 Me. 403; *Barnes* v. *Union Mut. Fire Ins. Co.*, 51 Me. 110; *Day* v. *Charter Oak Fire & Marine Ins. Co.*, 51 Me. 91.

Among the conditions of insurance named in the policy is one declaring, "in case the insured shall mortgage the property, without notifying the secretary, then the insured shall not be entitled to recover from the association any loss or damage which may occur in or to the property hereby insured, or any part or portion thereof." As the contract of insurance was entire and indivisible, the legal effect of a violation of this condition, if valid, on the part of the insured, by mortgaging any portion of the insured property, was to avoid the entire policy. The validity and binding obligation of such a condition in a policy has been too frequently considered and sustained by the courts to be longer open to inquiry or discussion. *Savage* v. *Howard Ins. Co.*, 52 N. Y. 502, and authorities cited *supra*; *Langdon* v. *Minn. Farmers' Mut. Fire. Ass'n*, 22 Minn. 193. It follows, if the insured in this instance, after the issuance of the policy and before the loss by fire, mortgaged any portion of the insured property, without notifying the secretary of the association thereof, it defeated her right of recovery, not

only as respects the loss of that portion covered by the mortgage, but the entire property embraced by the policy. The ruling of the district court, in its instruction to the jury upon this point, was clearly erroneous, and vitiates the verdict.

A further point is presented in regard to the notice which the insured was required to give, of the mortgage, to the company, under its by-laws, and the stipulation contained in the policy, both of which, it is conceded, entered into and formed a part of the contract of insurance in this case— whether a notice by mail was sufficient, when it was never in fact received by the secretary of the association.

The stipulation embodied in the policy required the secretary of the company to be notified of the fact of the mortgage, by the insured, without specifying the manner in which it was to be done. The by-laws provided that the insured should "make a representation, in writing, to the secretary, stating the amount and to whom mortgaged, who should have power to give his assent to said mortgage, or to cancel the policy, as he should judge proper on examination of the same." On the trial, testimony was introduced, on the part of the plaintiff, tending to show a service of this notice by depositing, post-paid, a letter containing the required information, and directed to the address of the secretary, at the company's place of business. On the part of the defendant, testimony was introduced tending to disprove this fact, and to show that no such letter, and no notice whatever, were ever received by the company or its secretary. Upon this state of facts the court instructed the jury:

" 1. That the notice required to be given to the secretary of the defendant, in case of mortgage upon property insured, need not be a personal notice—that is, delivered to the secretary; but if the jury should find from the evidence that the plaintiff, in good faith, wrote to the secretary of and concerning the mortgage, and deposited said letter in

the post-office at Sleepy Eye, properly addressed and
directed to the secretary of the defendant, postage paid, at
his place of residence in Minneapolis, that would be a suffi-
cient compliance with the by-laws, and a sufficient notice in
law.

"2. That if they, (the jury,) should find the testimony
of the witness Gustav Plath to be true, in respect to what
he did to notify the secretary of the defendant, in good faith
on his part, as the husband of the plaintiff, it would be such
an attempt on the part of the plaintiff to notify the defendant
as would excuse her from a literal compliance with the by-
laws, and would be a sufficient notice in law."

In each of these instructions it is erroneously assumed,
as a matter of law, that a proper service by mail of the
required notice, even though never in fact received by the
secretary, was a full compliance with this provision in the
policy and by-laws on the part of the insured.   The purpose
of the stipulation in regard to notice was to provide the
secretary with actual knowledge of the desired fact, and this
the insured obligated himself absolutely to do.   Though
unrestricted in his choice of means in doing it—save, per-
haps, that it should be in writing—the risk was wholly his,
and not that of the company.   Nothing less than actual
reception, by the secretary, of the information can be regarded
as sufficient in law to satisfy the requirements of the con-
tract in this regard.   Of course, as a matter of evidence,
proof that a letter containing the information, addressed to
the secretary, was put into the post-office, with the postage
paid thereon, and properly directed to him at the place
where he usually received the mail of his company, would
be sufficient to raise the presumption that it reached its
destination, and was received by him, by due course of
mail, and in the usual and regular time.   1 Greenl. Ev.
§ 40 ; 1 Taylor Ev. § 147 ; *Com.* v. *Jeffries*, 7 Allen, 548,
563.   But this is a mere presumption of fact, for the con-
sideration of the jury alone, and liable to be rebutted by

other evidence or proofs that the letter was never in fact received. There is no principle of the common law, however, and no authority, so far as we are advised, to the effect that an obligation of this character in this kind of a contract is discharged by depositing in the post-office, properly addressed and directed, and with the postage paid, a letter containing the required notice, it being admitted that its destination was never reached. See *Freeman* v. *Morey*, 45 Me. 50 ; *Greenfield Bank* v. *Crafts*, 4 Allen, 447, 457.

A new trial must be granted on both the foregoing grounds.

The preliminary objection to the appeal, made by plaintiff's first point, is not well taken. The only effect of the stipulation entered into between the parties, before the hearing of defendant's motion for a new trial, so far as it affected its rights in respect to the motion, was to limit the grounds thereof as therein stated

Order reversed.