## THE FIREMAN'S FUND INSURANCE COMPANY v. BARKER.

1. INSURANCE.
The policy upon personal property contained provisions that it should be void if the insured concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof, or if the interest of the assured in the property be not truly stated therein, or if the interest of the insured be other than an unconditional and sole ownership, or if any change * * * takes place in the interest, title or possession of the subject of the insurance. At the time of the issuance of the policy there was a chattel mortgage on part of the property, the existence of which was not mentioned, and another was subsequently put on without the consent of the insurer. *Held*, the policy was rendered void as to the property so incumbered.

2. SAME.
Where the contract of insurance is severable, as where specified amounts were placed upon different articles, and the policy is avoided as to certain articles by reason of untrue statements of the insurer's interest in such goods, that fact alone will not prevent a recovery of the loss as to the other chattels.

3. INSTRUCTIONS.
It is erroneous to give instructions not based upon the evidence.

*Appeal from the District Court of Montrose County.*

ON August 20, 1892, appellant insured appellee for one year for the amount of $500 on household furniture; $875

on alfalfa in stack and $125 on wheat and oats in stack. Alfalfa estimated at 700 tons and oats 600 bushels. Appellee paid for such insurance $55.00. On the 4th day of December, 1892, the entire alfalfa hay crop and 400 bushels of grain were destroyed by fire. Notice and proof of loss was made. Other insurance companies had additional risks on the same property. One E. E. Beard, who designated himself as "independent adjuster," was sent to adjust the loss by the appellant, and its liability was fixed at $935. Beard at about the same time made the discovery that appellee had made two chattel mortgages upon the burnt property,— one to Thomas A. Mostyn, who owned the ranch occupied by appellee, for the sum of $844.70, dated January 1, 1892, prior to the insurance; the other to Goldsmith & Co. for $375, November 10, 1892, subsequent to the insurance,—and notified appellant of the fact, whereupon appellant refused to pay the losses. Appellee brought suit; a trial to a jury was had, resulting in a verdict for the plaintiff for $958.20, and $54.65 interest, making $1,012.85. A motion for a new trial was overruled; judgment entered upon the verdict and an appeal prosecuted to this court.

Mr. T. J. BLACK, for appellant.

Messrs. SHERMAN & TWITCHELL, for appellee.

REED, P. J., delivered the opinion of the court.

The following provisions occur in the policy of insurance delivered to appellee: "This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the assured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured, touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

" Or if the interest of the insured be other than unconditional and sole ownership ; or if the subject of insurance be a building on ground not owned by the insured in fee simple ; or if with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed ; or if any change, other than the death of the insured takes place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured or otherwise."

The complaint was in the ordinary form. The allegations were denied and defendant specially pleaded the above provisions of the policy, and alleged that appellee had concealed the fact of the existing chattel mortgage to Mostyn, misrepresented facts in regard to the ownership by him of the property, and subsequently, without the consent of appellant, executed the chattel mortgage to Goldsmith & Co., of which appellant had no notice until after the bringing of the suit, and that for those reasons the policy was void.

Plaintiff replied, alleging knowledge of the defendant of the Mostyn chattel mortgage and that the mortgage to Goldsmith & Co. was a renewal,—was upon other property ; that the hay was embraced in it without his knowledge ; that he executed it and had no knowledge until long after that the hay was embraced in it.

The plaintiff was not present at the trial, consequently did not give evidence, nor was any given in his behalf in support of the allegations in his replication. L. F. Twitchell, attorney for plaintiff, testified that plaintiff had agreed to be at the trial, " but they had lost track of him ; " did not know where he was. Witnesses for the defendant testified to want of knowledge of the existence of the mortgages, that the agent Upton who made the insurance testified that plaintiff stated at the time the insurance was effected that the property was not incumbered. The members of the firm of Gold-

smith & Co. testified to plaintiff's knowledge that the hay was embraced in their chattel mortgage.

The language of the contract of insurance is plain, unmistakable. The failure to notify the company of the existence of the Mostyn mortgage at the time the insurance was effected and the subsequent mortgage to Goldsmith & Co. rendered the policy void. Courts cannot reform contracts nor relieve contractors from the effects of foolish or improvident contracts, except when obtained by fraud. Where there is no ground for construction, contracts must be enforced as made. The Mostyn mortgage was of record as required by statute. The object of the statute is to afford notice, and such record is held in law to be constructive notice to all. No good reason can be given why insurance companies should not be embraced in the general law and be considered as having the notice, nor why, with the public record existing, the validity of the contract should depend upon the failure of the insured to state the existence of the mortgage, but such was the contract.

It would in justice and reason seem that where insured personal property was in the possession of the insured, and the title of the mortgagee was defeasible, that until condition broken the right to secure insurance was one pertaining. How the hazard could be increased so as to avoid the contract by the fact of the chattel mortgage is a question only those engaged in insurance can satisfactorily answer. By the terms of the contract the making of the mortgage to Goldsmith & Co., without the consent of the insurer, rendered it void. The third instruction given by the court was erroneous, where it was said:

" But if it should appear from the evidence that said plaintiff executed said mortgage through mistake, and that the execution and delivery of said mortgage was unintentional upon his part, then, notwithstanding the provisions of said policy regarding the incumbrance of property insured without the knowledge or consent of the company, such action on the part of the plaintiff, if unintentional and done through

an honest mistake, would not vitiate such policy or render the same void, unless subsequent to the execution of such mortgage and prior to the alleged loss upon the property insured notice that such property was included in such mortgage was brought to the knowledge of said plaintiff, and that after such notice and prior to said loss he failed to notify said company regarding such mortgages or obtain its consent in relation thereto, unless, prior to such loss, knowledge in any manner of the existence of said mortgages was brought home to said company, and after such knowledge it failed to object thereto."

Instructions not based upon the evidence cannot be given.

The mistake and want of knowledge was alleged in the replication, was unsupported by evidence, and was contradicted by the testimony of the members of the firm of Goldsmith & Co. The facts of the hay being in the mortgage and its execution by the insured were unquestioned. There was testimony that he suggested or mentioned the hay as security that he would give, also that he read the mortgage and knew it was included.

If through negligence or inattention the hay was included without his knowledge and no fraud or deception was practiced in obtaining the mortgage, proof of want of knowledge would not relieve him from legal responsibility for the act. Instead of submitting to the jury the question of knowledge and intention, under the evidence the only proper instruction that could have been given would have been to require the jury to disregard it.

Other instructions were faulty, noticeably the fourth, in which the question of the adjustment of the loss was submitted to the jury. All the evidence was that the company had no knowledge of the violations of the contract. The acts of the adjuster in fixing the amount of loss could not be in anything regarded as a promise to pay or a recognition of the validity of the claim.

The second instruction is clearly erroneous. It is: "As to the Mostyn mortgage, to which your attention has been

directed in the preceding instructions, the court instructs you that the existence or nonexistence of such mortgage at the time of the issuance of said contract of insurance, or the truth or falsity of any statements which the plaintiff may have made in regard to the existence or nonexistence of such mortgage, are not material in this case, and will not defeat a recovery by plaintiff herein, unless you should find from the evidence that the existence of said mortgage was fraudulently and in bad faith concealed by said plaintiff, or that he fraudulently and in bad faith made statements in regard thereto, and that by reason of such concealment or statements in relation to such mortgage the risk incurred by defendant in issuing said policy was thereby materially increased."

Comment upon it is unnecessary. It is so at variance with the law of contracts, particularly those of insurance, that the errors are apparent.

Whether or not the established facts in this case *should* exonerate appellant from the payment of the money, and whether equity and fair dealing would not require payment by it, unless it was shown to have sustained some injury by reason of the irregularities, are questions we are not called upon to answer. The courts, both federal and state, are cumbered with cases of insurance where insurers contracted, received the compensation and issued a policy, and when a loss occurred sought to evade payment through some alleged breach of technical provisions so lengthy, intricate and complicated that no insured, of ordinary capacity, could be expected to read them, much less understand them. Even courts of last resort fail to agree upon their legal construction. Experience and human ingenuity seem to have been strained to the utmost to devise traps for the unwary and provide avenues of escape for the insurer; but so long as no legislative remedies are applied to simplify the business and put it upon the same basis as other contracts—and applying the doctrine of *caveat emptor*—exist, courts can only attempt to

apply the contracts as made by the parties, regardless of the great disadvantage to which the insured are subjected.

Authorities are numerous, from courts entitled to greatest consideration, that the policy of insurance in this case was rendered void by violations of its provisions by appellee, and that no recovery could be had.

There was no conflict of evidence. It was all in favor of the defendant. The verdict was against the evidence. 1 May on Ins., secs. 169, 170, 195, 197; Woods on Ins., secs. 195, 197; *Columbia Ins. Co. v. Lawrence*, 10 Pet. 507; *Baudrey v. Ins. Co.*, 2 Wash. C. C. 391; *Wash. Life Ins. Co. v. Haney*, 10 Kan. 525; *Louisiana Mut. Ins. Co. v. Ins. Co.*, 13 La. An. 246; *Freesmith v. Ins. Co.*, 25 Barb. (N. Y.) 497; *Gould v. Ins. Co.*, 47 Me. 403.

There was no conflict of evidence. It was all in favor of the defendant and the verdict in conflict with it. The instructions as shown were erroneous; questions unsupported by evidence were submitted.

The contract of insurance was clearly severable; separate amounts were specified upon the hay and grain. The latter does not appear to have been involved in the controversy. Nothing appears in the record to prevent recovery of the loss upon the grain.

The judgment will be reversed and cause remanded.

*Reversed.*