PHILIP D. ARMOUR et al., Appellants, *v.* THE TRANSATLANTIC FIRE INSURANCE COMPANY OF HAMBURG, GERMANY, Respondent.

A material misrepresentation made in applying for a policy of insurance will, although honestly made, avoid the policy.

So, a material misrepresentation, made by the agent of the insured for effecting the insurance, will defeat the policy, although not known to the insured, and though made without fraudulent intent on the part of the agent.

Defendant issued a policy of insurance upon plaintiffs' warehouse, by the terms of which other insurance was permitted without notice, and it was provided that losses should be apportioned on the whole sum insured, and that any misrepresentation whatever should avoid the policy. Plaintiffs' agent, who applied for the policy, through mistake, stated that there was already $200,000 insurance upon the building; there was in fact but $30,000. In an action upon the policy, *held,* that the misrepresentation was material and that the complaint was properly dismissed.

(Argued June 14, 1882 ; decided December 12, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made on the first Monday of March, 1881, which affirmed a judgment in favor of defendant, entered upon an order dismissing plaintiffs' complaint on trial. (Reported below, 15 J. & S. 352.)

This action was upon a policy of fire insurance, the material portions of which, as well as the facts pertinent to the questions discussed, are stated in the opinion.

*D. M. Porter* for appellants. The representation by Dickinson as to the rate of insurance was at most an immaterial statement, being a mere expression of opinion of price. (*Chandler* v. *Lopus*, 1 Smith's Lead. Cases, 238, 299; *Ellis* v. *Andrews*, 56 N. Y. 83; *Chester* v. *Comstock*, 6 Robt. 1; affirmed, 40 N. Y. 575, note; *Furman* v. *Titus*, 8 J. & S. 284; *Train* v. *Holland Purchase Co.*, 62 N. Y. 598; *Stone* v. *Flower*, 47 id. 566; *Worrall* v. *Munn et al.*, 1 Seld. 229; *Alston* v. *Mechs.' Mut. Ins. Co.*, 4 Hill, 329, 330; *White* v. *Ashton*, 51 N. Y. 280; *Riley* v. *City of Brooklyn*, 46 id. 444; *Wilson* v. *Deen*, 74 id. 531; Benjamin on Sales [3d Am. ed.], § 202, p. 185; *Seeley* v. *H. R. R. R. Co.*, 17 N. Y. 131; *Whitaker* v. *Eighth Ave. R. R. Co.*, 51 id. 295; *Johnson* v. *Thompson*, 23 Hun, 90, 91; *Hallock* v. *Com. F. Ins. Co*, 2 Dutcher [N. J.], 268; *Taylor* v. *Merchs.' Ins. Co.*, 9 How. [U. S.] 390; *Long* v. *Warren*, 68 N. Y. 426, 431, 432, 433.) There was no misrepresentation in stating that there was already $200,000, in block 3 of Armour & Co.'s property. The words " Armour & Co.'s property " were used distributively. (*Herman* v. *Adriatic F. Ins. Co.*, 85 N. Y. 162, 163.) Fraud cannot be predicated without intent to deceive. (*Chester* v. *Comstock*, 6 Robt. 1; *Ormrod* v. *Huth*, 14 M. & W. 651; *Marsh* v. *Falker*, 40 N. Y. 562, 565; *Sprague* v. *Holland Purchase Co.*, 69 id. 128; *Hopper* v. *Sisk*, 1 Ind. 176; *Campbell* v. *Hillman*, 15 B. Monr. [Ky.] 508; *Ball* v. *Lively*, 4 Dana [Ky.], 369; *McDonald* v. *Trafton*, 15 Me. 225; *Stone* v. *Denny*, 4 Metc. [Mass.] 398; *Ayres* v. *Scribner*, 17 Wend. 407; *Juniatta B'k* v. *Brown*, 5 S. & R. 226; *Loucheim* v. *Henszey*, 77 Penn. St. 305; *St'mb't Belfast* v. *Boon*, 41 Ala. 50; *Lamerson* v. *Marvin*, 8 Barb. 9; *Blen* v. *Bear River & Co.*, 20 Cal. 602; Wood on Fire Ins., § 429 and note, 745, 747; *Wolf* v. *Goodhue F. Ins. Co.*, 43 Barb. 400; Kerr on Fraud and Mistake [Bump's ed.], 326; *Keeler* v. *Niagara Ins. Co.*, 16 Wis. 523; Wood on

Insurance, § 429 and note, 747.)   To make the declarations or admissions of an agent evidence against his principal, they must be connected with the transaction then being done by him for his principal.   They must be made not only during the continuance of the agency, but in regard to a transaction depending at the very time.   (*Luby* v. *H. R. R. R. Co.*, 17 N. Y. 131; *Johnston* v. *Thompson*, 23 Hun, 90; *Whitaker* v. *Eighth Ave. R. R. Co.*, 51 N. Y. 295; *Anderson* v. *R. R. Co.*, 54 id. 334, 341; *Bap. Ch.* v. *B. Ins. Co.*, 28 id. 153–160; *Cortland Co.* v. *Herkimer Co.*, 44 id. 22–24; *Hydorn* v. *Cushman*, 16 Hun, 107; *Furst* v. *Second Ave. R. R. Co.*, 72 N. Y. 542; *Reed* v. *N. Y. C. R. R. Co.*, 45 id. 574; *Spatz* v. *Lyons*, 55 Barb. 476; 1 Greenleaf on Evidence, § 110; *First Nat. Bk.* v. *Ocean Nat. Bk.*, 60 N. Y. 278; *People* v. *Davis*, 56 id. 95.)

*Lewis Sanders* for respondent.   Untrue representations, which affect the mind of the insurer in issuing the policy, avoid the policy.   (*Valton* v. *Nat. Loan Fund Life Assn. Soc.*, 4 Abb. Dec. 437; *Gates* v. *Mad. Co. Mut. Ins. Co.*, 2 N. Y. 49.)   The policy was delivered on condition that it should be returned if the board rate was not seventy-five cents on the $100.   Not being under seal, it could be delivered to the plaintiff nditionally.   (*Benton* v. *Martin*, 52 N. Y. 570.)

llo, J.   The court at the trial dismissed the complaint in this action, on the defendant's evidence, and refused the plaintiffs' request to submit the questions of fact in the case to the jury.   The only questions for our consideration are whether the facts alleged on the part of the defendant were, or either of them was, sufficient to defeat the plaintiffs' claim to recover, and so clearly proved by conclusive or uncontroverted evidence as to justify the court in withdrawing the case from the consideration of the jury.   The action was upon a policy of insurance issued by the defendant upon a warehouse of the plaintiffs in the city of Chicago, which was partially destroyed by fire upon the 25th of January, 1879.   The warehouse consisted of three sections, and the amount of insurance on one of

the sections covered by the plaintiffs' policy was $3,000. The loss on that section was about $14,000, and the total insurance thereon about $17,000. The amount insured on all three sections was $38,000, exclusive of defendant's policy, at the time of the loss. The *pro rata* share of loss claimed from the defendant was $2,440.

The defendant set up three defenses. *First.* That the policy was issued upon a misrepresentation of the plaintiffs, through their agent, that the rate of insurance in Chicago on the premises insured was, at the date of their application for said insurance, seventy-five cents for every $100 insured for the term of one year; whereas, in fact, the rate of insurance upon the property in Chicago at the time of plaintiffs' application was $1.25 for every $100 insured. *Second.* That at the time of the application for said insurance, the plaintiffs,. by their agent, represented that the property sought to be insured was already insured in the amount of $200,000 in various other companies, of which a list was furnished; that the defendant relied upon the truth of said representation in making the policy and accepting the risk, but that in fact none of the property mentioned in said policy was insured in the amount of $200,000, or to exceed the sum of $50,000. *Third.* That, according to the terms of the policy, the defendant was entitled to terminate it on giving notice to the plaintiffs, and that it did so elect to terminate it before the alleged loss by fire.

The plaintiffs, after making the *prima facie* proof necessary to maintain the action on their part, rested their case, and the defendant introduced evidence in support of the defenses set up by it. We have carefully examined the evidence, and think there may be some question as to whether the allegation of misrepresentation as to the rate of insurance should not have been submitted to the jury; but the defense of misrepresentation as to the amount of insurance on the property was, we think, so fully established that a verdict in favor of the plaintiffs could not have been sustained.

The insurance was effected by the plaintiffs through Mr. Cameron of Chicago, who, with the knowlege of the plaintiffs,

employed a broker in New York, named Dickinson, to obtain the insurance in that city. The whole warehouse was divided into three separate sections — A, B and C. Mr. Cameron was authorized by the plaintiffs to procure $80,000 upon the entire building, viz. : $20,000 on section A, and $30,000 each on sections B and C. The plaintiffs at that time had over $200,000 of insurance upon the stock of merchandise in the warehouse, but had no insurance upon the building. Mr. Cameron, by letter, instructed Mr. Dickinson in New York as to the situation of the building, and informed him that he probably should request him by telegraph to effect the insurance in question, in New York, on the building ; that $200,000 had already been placed on the three sections at three-quarters per cent. Mr. Cameron, in his testimony taken on commission, says that in employing that language he referred to the insurance on the stock in the warehouse, and did not intend to refer to the insurance on the building. But, nevertheless, the letter which conveyed Mr. Cameron's instructions states distinctly that $200,000 had already been placed, in Chicago, on the three sections of the warehouse, and Mr. Dickinson states that he understood that the $200,000 of insurance was upon the warehouse.

Mr. Hoenig, the general manager of the defendant, testifies that when Dickinson applied to the defendant for the policy in question, he stated to him that he already had $200,000 of insurance on the building in Chicago, and that in issuing the policy he acted upon the statement of Mr. Dickinson that the board rate of insurance in Chicago was seventy-five cents on $100, and that there had already been procured insurance on the building to the amount of $200,000. Mr. Dickinson does not contradict this statement, but testifies that he exhibited to Mr. Hoenig the list of companies which he had received from Chicago, stating that they were on the risk, and that he understood that that risk was on the building, and he was not informed that it was on the stock, until after the fire. There is consequently no conflict of evidence on that point between these two witnesses.

By the terms of the policy of the defendant other insurance

was permitted without notice, and it was provided that losses should be apportioned on the whole sum insured, and it was further provided that any omission to make known every fact material to the risk, or any overvaluation, or any misrepresentation whatever, either in a written application or otherwise, should avoid the policy. The representation in this case was not fraudulent, and arose from a mistake or misapprehension of the plaintiffs' agent, but, nevertheless, it was a very material representation, and was untrue, the insurance on the entire building being, as appears by the testimony of one of the plaintiffs, only $30,000 at the time of the application to the defendant, and the insurance on the section which was injured only $17,000. Had the insurance been $200,000, the proportion of loss chargeable to the defendant would have been comparatively trifling. The risk was greatly enhanced by the comparatively small amount of insurance actually existing.

On the other branches of the defense, the testimony indicates that the defendant issued the policy to Mr. Dickinson with the express understanding that if the board rate in Chicago was more than three-quarters per cent, the policy should not take effect and should be returned, and that long before the fire, having ascertained that the rate was $1.25, they recalled the policy and demanded its surrender. There is, however, some slight conflict of evidence in relation to these points, but it is unnecessary to consider them, as we find that the misrepresentation as to the amount of other insurance is so clearly established that a recovery by the plaintiffs could not have been sustained. It is not necessary, in all cases, in order to sustain a defense of misrepresentation in applying for the policy, to show that the misrepresentation was intentionally fraudulent. A misrepresentation is defined by Phillips to be where a party to the contract of insurance, either purposely or through negligence, mistake, or inadvertence, or oversight, misrepresents a fact which he is bound to represent truly (Phil. Ins., § 537), and he lays down the doctrine that it is an implied condition of the contract of insurance that it is free from misrepresentation or concealment, whether fraudulent or through mistake. If the mis-

representation induces the insurer to enter into a contract which he would otherwise have declined, or to take a less premium than he would have demanded had he known the representation to be untrue, the effect as to him is the same if it was made through mistake or inadvertence, as if it had been made with a fraudulent intent, and it avoids the contract. An immaterial misrepresentation, unless in reply to a specific inquiry, or made with a fraudulent intent, and influencing the other party, will not impair the contract. But if the risk is greater than it would have been if the representation had been true, the preponderance of authority is to the effect that it avoids the policy, even though the misrepresentation was honestly made. (Phillips on Ins., §§ 537–542; *Wall* v. *Howard Ins. Co.*, 14 Barb. 383.)

A material misrepresentation by the agent for effecting the insurance will defeat it, though not known to the assured, and though made without any fraudulent intent on the part of the agent, to the same extent as though made by the assured himself. (*Carpenter* v. *Am. Ins. Co.*, 1 Story's C. C. 57.) In this case (which was a case of fire insurance) STORY, J., says : " A false representation of a material fact is, according to well-settled principles, sufficient to avoid a policy of insurance underwritten on the faith thereof, whether the false representation be by mistake or design."

The rules as to misrepresentations and concealments, or omissions to state facts material to the risk, are more strict in cases of marine than of fire insurance. But the distinctions are founded on the differences in the character of the property, and the greater facility the insurers possess, of obtaining information as to its condition and surrounding circumstances in cases of insurance on buildings, etc., than on vessels, which are often insured when absent or afloat, and the distinctions are applied, ordinarily, in cases where the insurer sets up the omission of the insured to state material facts. In those cases there is a difference between the rules applicable to marine insurances and those applicable to fire insurance. But where the defense is a material affirmative misrepresentation as to a matter which is presumably within the knowledge of the party applying for

the insurance, and as to which the insurer has not the same means of knowledge, there is no ground for any distinction between cases of fire and marine insurance. (See Phillips on Ins., § 635, etc.)

Where any doubt exists as to the materiality of the misrepresentation, it is a question of fact for the jury. But in this case it so clearly appears that the amount of risk incurred by the defendant was so much greater than it would have been had the representation as to other insurance been true, that a verdict that the representation was immaterial could not have been sustained. Aside from these considerations, however, in the present case the parties stipulated in the policy that any misrepresentation whatever, either in a written application or otherwise, should avoid the policy, and the parties, by this agreement, put every material representation on the same footing as a warranty. (*Burritt* v. *Saratoga Co. M. Fire Ins. Co.*, 5 Hill, 188.) That that is the effect of such an agreement was reaffirmed in this court in *Gates* v. *The Madison Co. Mut. Ins. Co.* (2 N. Y. 49–53).

The judgment should be affirmed.

All concur.

Judgment affirmed.