(40 Misc. Rep. 316.)

### EVANS v. COLUMBIA FIRE INS. CO.

(Supreme Court, Trial Term, Westchester County. March, 1903.)

1. INSURANCE—POLICY—IMPLIED CONDITIONS.
   There is an implied condition in all policies of insurance that material representations of fact made by the insured are true.

2. SAME—ACTION ON POLICY—ANSWER.
   Where, in an action on a policy, insurer pleads a breach of the implied condition that material representations of fact are true, the insurer may show misrepresentations.

3. SAME—MISREPRESENTATIONS.
   Where defendant insured the cotton presses of plaintiff throughout the United States, it may show that it took the risk on the faith of a representation of the insured that it had only 150 of such presses, and that only a few of them were in couples, whereas substantially all were in couples, where the number of the presses and their proximity affected the risk.

Action by Myron E. Evans against the Columbia Fire Insurance Company to recover on a policy issued to the American Cotton Company, plaintiff's assignor. Verdict directed for plaintiff, and defendant moves for a new trial. Granted.

The policy insured all of the cotton presses of the said American Cotton Company "located at any point or place throughout the United States.

* * * to an amount not exceeding $300,000," and provided that the "liabil-ity in any one loss shall not exceed $5,000 and that no one single press shall be valued at more than $2,500 and that no double press shall be valued at more than $5,000." The said cotton company had such presses in operation at different places in many states throughout the United States.

The answer pleads as a defence that the said American Cotton Company at the time the contract of insurance was entered into represented to the defendant that the total number of cotton presses covered by the proposed contract was only about 150 single presses; and that the defendant relied upon the truth of such representation and was induced thereby to make the contract: but that in fact there were 700 of such presses.

The answer pleads as a second defence that after the contract was made, the said insured represented to the defendant that in a few places it had two presses together, and requested the defendant to amend the policy by increasing the amount of its liability for any one loss from $2,500 to $5,000, which the defendant did, relying upon such representation; but that in fact all of the said presses were located two together except in one instance.

The said representations were not set out in the policy, but were oral; and the policy contained no provision that it should be void or voidable if any representation on which it was granted were false.

John Notman, for plaintiff.
Albert A. Wray, for defendant.

GAYNOR, J. The case was disposed of at the trial on a question of pleading. There is no defence of fraud pleaded, but only a defence that certain misrepresentations of facts material to the risk were made by the insured to obtain the policy, and relied upon by the insurer.

It is claimed by the learned counsel for the defendant that such misrepresentations make the policy voidable, even though they be not fraudulent, and that therefore the pleaded defence is sufficient. This is plainly so where the representations are made warranties by the terms of the policy, or, though not so made warranties, if the policy provide that any misrepresentation shall make it voidable. In the one case the breach of warranty avoids the contract, whether the misrepresentations be material or not; while in the other the misrepresentations also avoid it, because the policy so provides, but only if they be material, unless the language be plainly to the contrary. Obviously, no plea of fraud, but only of breach of contract, like that interposed here, is necessary to present these defences.

These rules are of familiar use in the trial of causes. Fitch v. American Ins. Co., 59 N. Y. 557, 17 Am. Rep. 372; Graham v. Fireman's Ins. Co., 87 N. Y. 69, 41 Am. Rep. 348. But the present case does not fit either of them. Here there are no warranties in the policy, nor does it provide that it shall be voidable for misrepresentations. We have to do with representations dehors the written contract; and they are oral. Unless, therefore, their truthfulness is an implied condition of the contract, they are not of the contract, and their falsity cannot be a breach thereof, and proved under a defence to that effect; and this brings us to the precise point of the case.

If it be an implied condition of all contracts of insurance that they are free from material misrepresentations by the insured which induced the making of them, then they are different in that respect from contracts in general. The general rule of contracts is that such

misrepresentations avoid a contract only on the ground of fraud, or of mutual mistake of fact, and such a defence has to be pleaded. This rule is ample for every case of misrepresentation inducing a contract, and it is not apparent why insurance contracts, any more than any other, should need an additional rule of an implied condition that the contract is free from inducing misrepresentation. As Lord Mansfield said on the subject in the early insurance case of Carter v. Boehm, 3 Burr. 1905: "The governing principle is applicable to all contracts and dealings;" and he considered the question as one of fraud, either actual or constructive. In no case have I found the matter of mutual mistake of fact mentioned as a defence to an action to recover for a loss on an insurance policy; nor could it arise except in recent years, and only in those jurisdictions having a new system of pleading and practice under which such a defence could be interposed in a common-law action. A suit in equity to cancel the contract on that ground would always lie, however, and the common-law action would be stayed meanwhile.

The question of pleading which is before us is not discussed in any judicial opinion or text-book which has been cited to me, nor have I found any mention of it. If, however, it be an implied condition of contracts of insurance that all material representations of fact by the insured dehors the written contract are true, then it follows that every action to recover on an insurance policy for a loss allows of a defence of breach of such condition, the very same as though such condition were expressed in the policy; and therefore the defence of fraud or of mutual mistake of fact, based on such misrepresentations, is not necessary, but only optional.

An early and leading case in this country, always cited for the proposition that a misrepresentation of a material fact by the insured avoids the policy, is Carpenter v. American Ins. Co., 1 Story, 57, Fed. Cas. No. 2,428. The headnote of that case is as follows: "A misrepresentation of a material fact, whether it be made through mistake or design, avoids a policy of insurance underwritten on the faith thereof;" and it is fully supported by Judge Story's opinion. But when you read the statement of facts which precedes the opinion, you learn that the representations there were contained in two letters which are in terms referred to in the policy, and expressly made part of the contract. The case is therefore manifestly of no weight or relevancy on the question whether representations dehors the policy are impliedly of the contract. The language of the headnote and of the opinion is large, but its scope must nevertheless be restricted to the facts of the case. Judicial opinions in this country have ever since continued to use the same language, but when the facts are looked to the representations are invariably found to be made warranties by the policy, or else the policy contains the less stringent general provision already mentioned that the falsity of any representation shall avoid the contract. The recent case of Armour v. Transatlantic Fire Ins. Co., 90 N. Y. 450, may be referred to as typical. The headnote is as follows: "A material misrepresentation made in applying for a policy of insurance will, although honestly made, avoid the policy." Notwithstanding this broad generalization,

the report of the case discloses that the application was in writing, and that the policy contained a provision that "any misrepresentation whatever, either in a written application or otherwise, should avoid the policy." Page 455, 90 N. Y. Most of the text-books, especially the more recent ones, display a great lack of scientific accuracy and classification on this point; many of them, after the manner of modern text-books, being wholly made up of extracts from judicial opinions, which, detached from their context, are hopelessly contradictory, and serve more to mislead and confuse than to enlighten. Joyce on Ins. §§ 1882–1935.

For a long time after the case of Carter v. Boehm, supra, the rule as it seems to have been considered by the English courts was, as is pointed out in the scientific and discriminating text-book on Insurance by Mr. Arnould (section 525, 7th Ed.), that "although [in a given case of misrepresentation] no pretence existed for alleging actual fraud, yet the policy was to be considered void on the ground of constructive or legal fraud, i. e., such conduct on the part of the assured as, though it does not imply any moral turpitude in himself, yet, from the effect it has in fact of misleading the underwriter, is in legal language said to be fraudulent." The contract of insurance being one peculiarly dependent on the representations of the insured, the law correspondingly requires of him uberrima fides in the making of it; and on that principle of the strictest good faith on his part, fraud could the more easily be based in all cases on misrepresentations made through mistake, ignorance or accident. This enabled such fraud to be found in insurance cases when it might not be found in cases of other contracts.

Mr. Arnould does not manifest complete satisfaction with this rule, though he accepts it apparently for the sake of consistency, it being at one with the general rule applicable to contracts. Mr. Phillips in his equally scientific and able work on Insurance refuses to adhere to it, and rests the avoidance of insurance contracts for misrepresentations dehors the written contract also on the ground of an implied condition of the contract that there were no material misrepresentations. He says:

"The effect of a misrepresentation or concealment in discharging the underwriters does not seem to be merely on the ground of fraud, as has usually been laid down by writers on insurance, but also on the ground of a condition implied by the fact of entering into the contract, that there is no misrepresentation or concealment."

And again, after discussing the subject:

"The forfeiture of the insurance by misrepresentation is a forfeiture by a breach of a condition of the contract. So it seems to have been considered by Chancellor Kent."

The statement of Chancellor Kent referred to is as follows:

"A positive representation on a material point is essentially a part of the contract, and essentially a warranty, though it be not inserted in the policy." 3 Com. 282.

Though this be inaccurate in respect of representations dehors being warranties, it nevertheless shows the general opinion of the

author on the point that the truth of such representations is an implied condition to the validity of the contract.

The view of Phillips is set forth and adopted by Lord Esher in his luminous opinion in the case of Blackburn v. Vigors in the Court of Appeal, 17 Q. B. Div..p. 561, and apparently accepted by the other judges in the case. It is also adopted in a dictum of Judge Rapallo in the Armour Case, supra; and its general acceptance would do away with all confusion in text-books and judicial opinions between cases where the policies provide for the avoidance of the contract by false representation or warranties, and those where the policies contain no such provision, and the representations are dehors. The case of Campbell v. New England Life Ins. Co., 98 Mass. 381, is also instructive on the subject.

I therefore conclude that as there is in every contract of insurance, in the absence of an express provision on that head, an implied condition of the truth of all material representations of the insured on the faith of which the contract is made, a pleaded defence of the breach of such condition suffices; that it is optional with the defendant to plead it instead of a defence of fraud or of mutual mistake of fact.

The foregoing rule is subject to the rule applicable to insurance contracts, the same as to all other contracts, that oral evidence cannot be received to add to, vary or contradict the terms of a written contract, and may be affected and is limited by it. Walton v. Agricultural Ins. Co., 116 N. Y. 322, 22 N. E. 443, 5 L. R. A. 677; Mayor v. Brooklyn Fire Ins. Co., *43 N. Y. 465; New York Mechanics' Ins. Co. v. Thomas, 3 Johns. Cas. 1; Alston v. Mechanics' Mut. Ins. Co. of City of Troy, 4 Hill, 342.

Oral evidence of the defence pleaded in this case will not violate such rule. The defendant insured all of the cotton presses of the plaintiff throughout the United States. It does not seek to change that contract; it desires to show that it took the risk on the faith of a representation of the insured that it had only 150 of such presses, whereas it had 700, and that only a few of them were in couples, whereas substantially all were in couples; and, as we have seen, the truth of such representation is an implied condition and part of the contract. That the number of presses, and their proximity to each other, affected the risk, and were therefore material, seems to be plain.

The motion for a new trial is granted.