WILBERG JEWELRY CORPORATION,
Plaintiff,

v.

The PALATINE INSURANCE COMPA-
NY, Ltd., Frederick George Hall, Ex-
cess Insurance Company, Ltd., et al.,
Defendants.

United States District Court
S. D. New York.

June 12, 1962.

Prince & Loeb, New York City, for plaintiff (Sidney J. Loeb, New York City, of counsel).

Max J. Gwertzman, New York City, for defendant Palatine Ins. Co., Ltd.

Mendes & Mount, New York City, for defendants other than Palatine Ins. Co., Ltd. (J. J. Killea and J. P. Sullivan, New York City, of counsel).

COOPER, District Judge.

Plaintiff, a New York corporation, sues to recover $50,000 from defendant insurers under a jewelers' block policy with a $25,000 limit on a loss of property elsewhere than at plaintiff's premises and under an excess jewelers' block policy which supplemented the primary policy and provided an additional $25,000 coverage.

Defendant insurance companies are foreign corporations doing business in New York, and this Court's jurisdiction arises under the diversity of citizenship provisions, 28 U.S.C.A. § 1332.

On July 19, 1956, one of plaintiff's salesmen delivered into the custody of his hotel a valise containing his "line" of jewelry. The valise and contents were

never returned. It appears, and is not denied, that they were stolen. The loss was in excess of $50,000, no part of which has been recovered.

Defendant Palatine Insurance Co. issued the primary policy "In consideration of the premium * * * specified, and of the Proposal and Declaration which is hereby agreed to be the basis of this policy, and which the Assured warrants to be true * * *"; and the policy contains the following pertinent provision:

"20. This entire policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof * * * whether before or after loss."

The excess policy issued by the defendants other than Palatine is expressly made "subject to the same clauses and conditions applying to the Primary Policy" and is conditioned upon the primary policy being "maintained in full effect during the currency of this Policy."

■ Among other things, the proposal calls for information (item 12) concerning persons "having property in their custody or control outside of [the plaintiff's] premises during the last 12 months." The instructions at the beginning of the proposal state that the answers to certain questions, including item 12, "must be based on the 12 months period immediately preceding the date of this proposal."

The proposal, which was returned to the plaintiff and resubmitted with changes, bears the date "3/26/56." As ultimately issued, however, the Palatine policy insured plaintiff for a period of one year beginning February 17, 1956. During the interim period between submission of the proposal and issuance of the policy, plaintiff had been covered by a binder.

In response to the inquiry in item 12 concerning employees having jewelry in their custody or control outside of the premises in New York City, plaintiff gave the names of three salesmen and the "number of days" and "average amount" for each of them as follows:

| Name | Number of Days | Average Amount |
|------|----------------|----------------|
| Michael Berg | 150 | 15,000.00 |
| Aaron Berg | 150 | 15,000.00 |
| Philip Paul | 120 | 15,000.00 |

Defendants claim that these figures materially misrepresented the facts in that the "number of days" should have been 216, 290 and 263 respectively and the "average amounts" should have been about $40,000 for each salesman.

At the trial, plaintiff failed to produce its books and records covering these items. It was undisputed, however, that soon after the loss, Mr. Charles Maurer, an independent Certified Public Accountant engaged by defendants, was given access to all of plaintiff's books, records and papers. Mr. Maurer testified that his examination disclosed that jewelry had been in the custody or control of the three salesmen for 216 days (Michael Berg), 290 days (Aaron Berg), and 263 days (Philip Paul), during 1955. To reach this conclusion, he assumed that the jewelry had been in the custody or control of each salesman on and between the first and last day on which the books showed deliveries made from that salesman's line.

In an attempt to refute the accountant's conclusions, plaintiff sought to show that occasionally a salesman would return his line to the premises in New York, where it would remain separate from the other stock, and that after a short period the salesman's line of jewelry would be shipped back to him. Thus, plaintiff contends that a number of deliveries might conceivably have been made from the line while at the premises, and that, therefore, the sales records do not accurately reflect the number of days the line was in a salesman's possession outside the premises. No supporting records bearing out this contention have been submitted.

Indeed, the weight of the evidence, including the testimony of defendants' own bookkeeper, clearly confirms the conclusions reached by the public accountant and overwhelmingly establishes the existence of a wide discrepancy between the "number of days" and "average amount" figures stated by plaintiff in its proposal and the true facts.

At the time of his examination, Mr. Maurer discussed plaintiff's procedures with its president and with its bookkeeper. He had access to all books, records and papers, and conducted a thorough audit to determine the facts which extended over several weeks. Mr. Maurer found nothing to suggest that deliveries were made from the premises and credited to the line of a salesman.

The estimates of the accountant as to the number of days for which the salesman had custody or control of the jewelry outside the premises appear to have been minimum estimates, moreover, since a salesman might well have had the inventory in his possession for a few days before the first delivery and a few days after the last delivery. The Court finds Mr. Maurer's estimates entirely reasonable and substantially in accord with the facts. His conclusions as to the extent to which plaintiff understated the "average amount" appear even more convincing in the light of plaintiff's failure to produce the relevant records upon the trial.

Such perpetual inventory records of plaintiff as were introduced with respect to the merchandise of the three salesmen disclosed a rather constant balance of credits and charges. Although precision is lacking, it seems reasonable to assume, therefore, that these balances were kept fairly constant and did not deviate far from those shown when inventories were taken at various times during 1955. Upon the basis of all the evidence, the Court finds itself constrained to conclude that the "average amount" for each of the salesmen was actually at least $30,000, and not $15,000 as stated in the proposal.

New York Insurance Law, McKinney's Consol.Laws, c. 28, § 149(2), provides that:

"No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract."

In the case at bar, it seems apparent that knowledge by the insurer as to the true facts "would have led to a refusal" to make the particular insurance contract here involved. Certainly, the risk created was substantially greater than would have appeared from plaintiff's representations in the proposal. See Sebring v. Fidelity-Phenix Fire Ins. Co. of New York, 255 N.Y. 382, 384, 174 N.E. 761 (1931); Armour v. Transatlantic Fire Ins. Co., 90 N.Y. 450 (1882).

The evidence established that defendant Palatine was reluctant to assume too great a risk because of previous poor experience with plaintiff. Indeed, the company refused to write the policy with a limitation of liability of $50,000 as originally requested in the proposal and ultimately the proposal was amended and insurance written with a $25,000 limitation. From this, plaintiff argues that since the insurer was willing to insure a poor risk, it would have been willing to insure almost any risk in order to increase its sales. The Court cannot accept this rather tenuous contention since the testimony makes it entirely evident that no such contract would have been written had the insurer known the true facts.

Manifestly, plaintiff's misrepresentation was material for the reason that the risk which the insurer took under the true state of facts called for a higher premium.

Concededly, the primary insurer, Palatine, belonged to a rating organization which filed rates with the Superintendent of Insurance of the State of New York.

New York Insurance Law, § 184(1). As such, Palatine would have had to receive permission from the Superintendent in order to charge or receive any premium which deviated from the rates filed by the rating organization. New York Insurance Law, § 185. Palatine, of course, at no time requested such permission and the Court finds it inconceivable that the insurer would have been willing to break the law to write such a policy.

The premium charged with respect to Michael Berg, the salesman whose line was stolen, amounted to about $246. Had it been computed for 216 days at an average value of $30,000, the premium would have been about $710.

It is evident that a considerably higher premium would have been required on the entire policy covering all three salesmen if the true facts, rather than misrepresentations, had been submitted in the proposal. Defendant Palatine, in that event, might not even have been willing to write any policy at all.

Relevant in this connection is the decision of this Circuit in M. Chalom & Son v. St. Paul Fire & Marine Insurance Co., 285 F.2d 909 (2nd Cir., 1961). In that case the district court had granted summary judgment to an insurer after the plaintiff there stipulated that had the proposal contained *accurate* inventory figures, a policy would have been issued "at a premium higher than that set forth in the policy in suit." The Circuit Court affirmed and declared (at pp. 910, 911):

"We find no error in the disposition below. New York Insurance Law, § 149, subd. 2 provides that in order for the insurer to avoid an insurance contract a misrepresentation by an insured must be material; and for a misrepresentation to be material it must be of such gravity that if the insurer had known the truth it would have led to 'a refusal by the insurer to make such contract.' Plaintiff concedes that defendant would not have issued the contract in suit if defendant had known the truth with respect to

plaintiff's inventory, for plaintiff stipulated that the policy would then have been written at a higher premium than the premium plaintiff paid. See Armour v. Transatlantic Fire Ins. Co., 1882, 90 N.Y. 450. Moreover, defendant would have violated the rating laws of New York, New York Insurance Law, §§ 184, subd. 1, 185, subd. 1, were it to have covered the higher inventory by issuing a policy for the same premium as was paid by plaintiff."

That decision seems controlling in the case at bar.

Plaintiff here questions, on technical grounds, the sufficiency of the pleading of the primary defendant's affirmative defense. The relevant portion thereof reads:

"3. That in the said proposal, representations were made that merchandise located elsewhere in the United States other than the City in which the plaintiff's premises are situated and while in the custody of one Michael Berg, would not exceed the average amount of $15,000 or the maximum amount of $50,000 and that such property would not be in the custody of the said Michael Berg for a period exceeding 150 days for a period of twelve months prior to the date of the proposal."

Standing alone, the paragraph seems unclear as to whether the representations concerned the time subsequent or prior to the date of the proposal. But it gives fair notice that the representations sought to be proved at the trial might well concern the period "prior to the date of the proposal." Moreover, plaintiff had only to glance at the proposal attached to his policy to learn the exact nature and terms of the representation. Nothing even remotely resembling "unfair surprise" exists in this case. Dioguardi v. Durning, 139 F.2d 774 (2d Cir., 1944).

Plaintiff objected to the introduction of evidence of the misrepresentations concerning Aaron Berg and Philip Paul who were not mentioned in the

affirmative defense as pleaded. Clearly, "the presentation of the merits * * * will be subserved" by permitting amendment in this respect. Rule 15(b), F.R. Civ.P., 28 U.S.C.A. Furthermore, the representations concerning all three salesmen were so closely related that notice that the representations concerning Michael Berg were to be challenged was fair notice to plaintiff that its attempt to understate the other salesmen's inventories would also be involved in Palatine's defense at the trial.

For the reasons stated above, the complaint is dismissed as to each of the defendants. This opinion shall constitute the Court's findings of fact and conclusions of law.

So ordered.