DILLA C. SMITH, Defendant in Error, v. AMERI-CAN AUTOMOBILE INSURANCE COMPANY, Plaintiff in Error.

Kansas City Court of Appeals, April 5, 1915.

1. INSURANCE: Fire: Warranty: Material to Risk. Where no insurance was permitted upon an automobile of a model prior to 1908, a representation that an automobile, insured with de-fendant in 1912, was a 1910 model; when in fact it was a model of 1907, the representation was material to the risk as matter of law. Nor does the fact that the misrepresentation was innocently made change or affect the situation.

2. ———: ———: ———. Whenever the misrepresentation would have, or might have, a real influence upon the under-

writer either not to underwrite at all or not to underwrite except at a higher premium, it must be deemed material to the risk.

3. ———: ———: ———. Although the question of materiality is generally a question for the jury yet "when the risk is undoubtedly material; when it is of such a character as to strike all informed and fair minds alike, then the question of the materiality of the risk is a question of law for the court and should be so declared."

4. ———: Brokers: Agent of Insurer or Insured. An insurance broker is, in general, the agent of the insured and not of the insurer. He may, however, become an agent of the insurer if there is any action on its part recognizing him as such or facts from which authority to represent it may be inferred. But the mere fact that the broker solicits the insurance or receives his compensation from the insurance company does not make him its agent.

Error to Jackson Circuit Court.—*Hon. Harris Robinson*, Judge.

REVERSED.

*Morrison, Nugent & Wylder* for plaintiff in error.

(1)    The demurrer to the evidence should have been sustained. White v. Merchants Ins. Co., 93 Mo. App. 287; Harris v. Insurance Co., 126 N. Y. Supp. 118; Dolan v. Insurance Co., 88 Mo. App. 673; Kenefick-Hammond Co. v. Ins. Co., 119 Mo. App. 308; Columbia Ins. Co. v. Lawrence, 10 Pet. (U. S.) 516; Digby v. Ins. Co., 3 Mo. App. 603; Davenport v. Ins. Co., 6 Cush. (Mass.) 340; Armour et al. v. Trans-Atlantic Fire Ins. Co., 90 N. Y. 450; Gould v. Ins. Co., 47 Me. 403; Seal v. Farmers & Merchants Ins. Co., 59 Neb. 253; Goddard v. Ins. Co., 108 Mass. 56.

*Grant I. Rosenzweig* and *C. E. McCoy* for defendant in error.

(1)    The action of the court in refusing to sustain the demurrer to the evidence was correct. Hanna &

Company v. Insurance Co., 109 Mo. App. 152; Ritchey v. Home Ins. Co., 104 Mo. App. 146; White v. Ins. Co., 93 Mo. App. 282; Dolan v. Ins. Co., 88 Mo. App. 666; Kern v. Ins. Co., 40 Mo 19; Boggs & Leathe v. Ins. Co., 30 Mo. 67; Schroeder v. Ins. Co., 46 Mo. 174, 178; Shultz v. Ins. Co., 57 Mo. 331, 337; Atherton v. Ins. Co., 39 Atl. (Me.) 1006; Levy v. Ins. Co., 39 N. E. (Mass.) 792; Ins. Co. v. Lawrence, 10 Peters, 516; R. S. 1909, sections 7024-7025 and 7030. (2) Thomas Cashen was the agent of defendant. Shook v. Mutual Fire Ins. Co., 154 Mo. App. 394; Hilburn v. Ins. Co., 140 Mo. App. 355.

TRIMBLE, J.—Plaintiff brought suit on a policy of fire insurance covering her automobile. It was insured October 12, 1912, and about a month later, while plaintiff was riding therein, it took fire by self-ignition and was destroyed. The policy contained a warranty that the automobile was a model of 1910, (which means that it was manufactured that year). Plaintiff knew the policy contained this warranty, and the machine was stated to be a 1910 model in the statement of loss furnished the company and also in the petition. It is agreed, however, that the machine was in fact a model of the year 1907. And the defense is that this misrepresentation and warranty rendered the policy void, it being claimed that this warranty was "material to the risk" and, therefore, not affected by section 7024, Revised Statutes 1909, which avoids the effect of all other warranties.

Although defendant contended that the materiality of the risk was established as a matter of law and demurred to the evidence in chief and at the close of the case, the trial court took the view that it was a question for the jury and submitted the case upon that question. The jury found for plaintiff and defendant has appealed.

Plaintiff purchased the car about the 30th of August, 1912, obtaining it from her son-in-law, a Mr. Leppert, in payment of some money he owed her. The car was bought new in May, 1907, by a Mr. Jacques who kept it about two years and then sold it to Mr. Nellist who owned it for several months and then sold it to a man by the name of Meyer who in turn afterward sold it to Mr. Tibbetts, and about April, 1912, he traded it to Leppert for an equity in a house. After the son-in-law, Leppert, turned the car over to plaintiff it was insured under the policy in controversy.

Leppert attended to the procuring of the insurance in question, and plaintiff says he acted for her in so doing. He spoke to a man by the name of Cashen about getting insurance on the car for his mother-in-law. He had known Cashen when the two were on the police force together. At this time Cashen was an insurance broker and was writing life and accident insurance for the Columbia National Life Insurance Company. He was not an agent for defendant and never had been. He never had had anything to do with a policy of insurance in the defendant company prior to the policy now in suit, and has had nothing to do with any since. He was writing life and accident insurance, but not fire nor liability insurance. Whenever, in the course of his business, he ran across insurance out of his line he took it to some firm and "brokered" it with them, they paying him a commission.

When Leppert told him of the car and that insurance was wanted on it Cashen undertook to get it for him. Leppert orally described the car to him, Cashen noting down the items thereof. In describing the car, Leppert told him it was a 1910 model. Both he and Leppert say Leppert told him he "bought it for a 1910 model." When Leppert's deposition was first taken, however, he said he represented to Cashen that it was a 1910 model; that he did so because that was what

was represented to him when he got it and he knew nothing to the contrary. Cashen went and looked at the machine but he knew nothing about automobiles, and it is admitted that there was nothing whatever about the automobile by which its model year could be told. It is of little moment whether Leppert told Cashen he bought the car for a 1910 model or that it was such. Both men treated the matter as a statement of fact that it was a 1910 model, and it was so acted upon by Cashen with Leppert's knowledge.

Cashen did not tell Leppert any particular company he would get the insurance from, but took the information he had gathered to a man by the name of McCarty who was an insurance broker and agent for two fire insurance companies but who was not agent for the defendant and never had been. Whenever he obtained an opportunity to effect automobile insurance, he would place it in various companies, some of such insurance with the defendant and some with other companies. McCarty placed the insurance in question with the defendant company through its regular agents, Ennis & O'Brien, who paid McCarty twenty per cent of their commission, one-half of which twenty per cent McCarty paid to Cashen. The latter had nothing further to do with the matter, and, as stated before, has never obtained any insurance placed with defendant either before or since.

The rate sheet issued by the defendant to its agents, and by which they were governed in writing automobile insurance, prohibited the writing of fire insurance upon "any car prior to 1908 model." It allowed *liability* insurance to be written on cars more than four years old but not fire insurance. And the testimony was that no fire insurance was permitted or written on cars over that age. The rate sheets also showed that there was a continuous decrease in the amount of insurance allowed on a car the older it got during the years a car was insurable. There is a dis-

pute between the parties as to whether or not the rate increased as the car grew older and the amount of insurance permitted grew less, but the testimony is, and the two rate sheets when used jointly bear this out, that the rate increased. But whether it did or not, certain it is that insurance was not permitted on any model prior to that of 1908. It was also shown in evidence that cars depreciate very rapidly and that after three years they are not considered of so much value; that as cars grow older the chances of self-ignition increase on account of the wear and vibration whereby the quantity of gasoline used is greater and fire is more apt to occur. It would seem to be in accord with common knowledge that a five-year-old automobile would be less valuable than, and not so safe a risk as, one two years old, and that the effects of wear and tear would be more likely to manifest themselves in the older car. If the fact that the machine is five years old instead of two is not material to the risk we cannot well see what would be. But, however this may be, certainly the company has a perfect right to say it will not insure an automobile that is over four years old. And if the car was represented to the company to be only two when it was five years old, and the company had no means nor opportunity of knowing any different, then there was no contract of insurance entered into by the company with reference to this car. Hence, we think the representation as to the age of the car was material to the risk as a matter of law. The principle involved is more than the question whether the fire was attributable to the age of the car. If that were the question, then of course it would be for the jury to say whether the misrepresentation was material to the risk. But the materiality depends upon whether, had the true fact been known, the company would have insured it at all or would have limited itself to the premium charged. [Boggs v. American Ins. Co., 30 Mo. 63, l. c. 68.] Whenever the misrepresentation "would have, or might

have, a real influence upon the underwriter either not to underwrite at all, or not to underwrite except at a higher premium, it must be deemed material to the risk." [Columbia Ins. Co. v. Lawrence, 10 Pet. (U. S.) 506, 1. c. 516. To the same effect is Kennefick-Hammond Co. v. Norwich etc. Ins. Society, 119 Mo. App. 308, 1. c. 312; Armour v. Transatlantic Fire Ins. Co., 90 N. Y. 450; Gould v. New York Mut. Fire Ins. Co., 47 Me. 403; Goddard v. Monitor etc. Ins. Co., 108 Mass. 56.]

And although the question of materiality is generally held to be a question for the jury, yet "when the risk is undoubtedly material; when it is of such a character as to strike all informed and fair minds alike, then the question of the materiality of the risk is a question of law for the court and should be so declared." [Dolan v. Missouri etc. Ins. Co., 88 Mo. App. 666, 1. c. 673.] It is for the jury to determine "except in such clear cases as can be determined by the court as a matter of law." [Hanna v. Orient Ins. Co., 109 Mo. App. 152, 1. c. 156.] It was said in Harris v. St. Paul Ins. Co., 126 N. Y. Sup. 118, that it was perfectly clear that a car constructed in 1906 was not of the same insurable value, when insured in 1909, as a car constructed in 1907, and a representation that the car insured was a 1907 model when it was one of the year before, was material to the risk and avoided the policy.

Nor does the fact that the misrepresentation was innocently made change or affect the matter. [Armour v. Transatlantic Fire Ins. Co., 90 N. Y. 450; Gould v. New York etc. Ins. Co., 40 Me. 403.] In Seal v. Farmers etc. Co., 59 Neb. 253, 1. c. 257, it is said: "When the insurer makes inquiry about facts material to the risk, he is justified in acting on the assumption that the information imparted by the applicant for insurance is correct. He is entitled to know whether the property to be insured is incumbered, and if so, to

what extent, so that he may act intelligently in determining whether he will accept or decline the risk.   The representations of the applicant become the basis of insurance, and if they be false, touching matters material to the risk, the contract obtained through their influence cannot be enforced; and it is, in such case, quite immaterial whether the misstatement resulted from bad faith or from accident or ignorance.   [See Davenport v. New England Ins. Co., 6 Cush. (Mass.), 340; Hayward v. New England Mutual Fire Ins. Co., 10 Cush. (Mass.), 444; Brown v. Paople's Mutual Ins. Co., 11 Cush. (Mass.), 280; Jacobs v. Eagle Mutual Fire Ins. Co., 7 Allen (Mass.), 132; Anderson v. Fitzgerald, 4 H. L. Cas. (Eng.), 484; Byers v. Farmers Ins. Co., 35 O. St., 606; Ryan v. Springfield F. & M. Ins. Co., 46 Wis., 671; Glade v. Germania Fire Ins. Co., 56 Ia., 400.]''

So that, without regard to whether the representation was made in good faith or not, since it affected the very subject-matter of the insurance contract and placed the automobile in a class that made it appear insurable when it was not, the warranty that it was a 1910 model was material to the risk and can be so declared as a matter of law.

But, plaintiff seeks to avoid the effect of Leppert's representation by the fact that Cashen went to see the car.   It is admitted, however, that there was no means of telling by an inspection of the car what model it was and hence the inspection by Cashen afforded him no opportunity of ascertaining the true facts.   He still had to rely upon what Leppert told him.   And Leppert knew the only knowledge Cashen could get in regard to the car was such as he was giving him and that his information would be all that would be available and would be acted upon if insurance was issued.   It would be all that would be available and would be acted upon if insurance was issued.   It would seem that under the circumstances there is little or no difference, in effect,

between Leppert telling him he bought it for a 1910 model and telling him it was such. Either one, under the circumstances, was the statement of a fact upon which he knew Cashen was relying, and which plaintiff afterwards knew was received by the company, since it was put in the policy.

But if there be a difference in the two statements, and the one he now says he made be such as would require Cashen to learn for himself what model the car was, this would not affect defendant's liability unless Cashen was defendant's agent. Under the evidence, Cashen was no more than an insurance broker. [Edwards v. Home Ins. Co., 100 Mo. App. 695; Indiana Ins. Co. v. Hartwell, 123 Ind. 177; Gude v. Exchange Fire Ins. Co., 53 Minn. 220; Freedman v. Providence etc. Ins. Co., 182 Pa. St. 64; Sellers v. Commercial Fire Ins. Co., 16 So. 798; Lycoming Fire Ins. Co. v. Rubin, 79 Ill. 402; Stone v. Frankling Fire Ins. Co., 105 N. Y. 543; Bateman v. Lumberman's Ins. Co., 189 Pa. St. 465; Fromherz v. Yankton. Fire Ins. Co., 63 N. W. 784.] An insurance broker is, in general, the agent of the insured and not of the insurer, and, after obtaining a valid contract of insurance, is the agent of neither party. [Pringle v. Aetna Life Ins. Co., 123 Mo. App. 710.] He may, however, become an agent of the insurer if there is evidence of any action on its part recognizing him as such or of facts from which authority to represent it may be inferred. [Allen v. German American Ins. Co., 123 N. Y. 6.] There is no evidence of any such action on the part of the company, nor of facts from which agency can be inferred. Hence Cashen was a broker and nothing else, and if he failed to obtain any information he should have secured, or if what Leppert told him was sufficient to notify him that Leppert did not know what model the car was, then this cannot affect defendant. [Bradley

188MA20

v. German American Ins. Co., 90 Mo. App. 369; American Fire Ins. Co. v. Brooks, 39 Atl. 373.]

The fact that Cashen may have solicited the insurance from Leppert and that he received a commission does not change the situation. It seems that what Cashen did do was to solicit of Leppert insurance in his line, and that when he did so, Leppert then spoke to him of getting insurance on his mother-in-law's automobile. But even if he solicited it in the first place and got a commission for his trouble he was not the agent of defendant. "An insurance broker must be distinguished from an ordinary agent. He is generally the agent of the insured, and hence may bind him by his concealments and representations made in the course of the negotiations. . . . But the mere fact that he solicits the insurance from the insured and receives a commission from the company which delivers the policy to the insured does not make him the agent of the company." [Elliott on Fire Ins., sec. 157.] "The fact that the broker receives his compensation or commission from the insurance company does not make him its agent." [2 Clement on Fire Ins., 476; American Fire Ins. Co. v. Brooks, 34 Atl. 373.]

As soon as the company discovered the misrepresentation it promtly tendered the money for the premium back to plaintiff. Under the evidence the automobile was clearly not within the subject-matter of defendant's insurance and the misrepresentation was, as a matter of law, material to the risk, and the trial court should have so declared.

The judgment must, therefore, be reversed. It is so ordered. All concur.