Bernadean PITTMAN, Administratrix,
Joseph John Leavey, Sr., and
Juanita Leavey, Appellants,

v.

WEST AMERICAN INSURANCE COM-
PANY, a corporation, Appellee.

No. 16819.

United States Court of Appeals
Eighth Circuit.

Feb. 7, 1962.

Robert L. Boyce, Jr., Kansas City, Kan., for appellants and Robert E. Stewart, Kansas City, Mo., Howard Washburn, Kansas City, Kan., and James Farley, Farley, Mo., on the brief.

Paul C. Sprinkle, Kansas City, Mo., for appellee and Sprinkle, Carter, Sprinkle & Larson, Kansas City, Mo., on the brief.

Before SANBORN and VAN OOST-ERHOUT, Circuit Judges, and GRAV-EN, District Judge.

SANBORN, Circuit Judge.

This is an appeal from a final judgment in a declaratory judgment action brought June 13, 1960, by the West American Insurance Company under 28 U.S.C. § 2201 to secure the nullification of a policy of automobile liability insurance issued by it to Richard K. Pittman on April 1, 1960. The action is based upon the claim that in his signed application for the policy Pittman made material misrepresentations upon which the insurer relied in issuing the policy. The defendants are the administratrix of the estate of Richard K. Pittman, deceased, and the parents of Joseph John Leavey, Jr., who died as the result of riding with Pittman in his automobile in the early morning of May 22, 1960, on a Missouri Highway. Federal jurisdiction is based

on diversity of citizenship and amount in controversy.

The plaintiff's claim is stated in its complaint as follows:

"Plaintiff states that on or about April 1, 1960, Richard K. Pittman went to one John L. Tompkins, agent for the plaintiff herein, and made application for insurance upon a 1957 4-door Ford. Plaintiff further states that by his signed application, the said Richard K. Pittman, stated that he had never had any automobile insurance declined or cancelled; that he had never had a driver's license revoked, suspended or restricted; that he had not been involved in any accident as an automobile driver in the past three years. Plaintiff further states that based upon said representation and as the result of the same, it issued an insurance policy to the said Richard K. Pittman, being No. A 5051577, which ran from April 1, 1960, until October 1, 1960, for which a premium was paid and in which the liability coverage for bodily injury to one person was Ten Thousand ($10,000.00) Dollars and which also covered medical payments for each person in the sum of Five Hundred ($500.00) Dollars.

"Said insurance policy which was issued to the said Richard K. Pittman, among other things, in paragraph 16 provides as follows:

" '16. Declarations. By acceptance of this policy, the insured named in Item 1 of the declarations, agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.'

"Plaintiff states that on or about May 22, 1960, at 2:10 A.M. in the morning, the said Richard K. Pittman was driving the automobile covered by said insurance policy on Highway 45 in the State of Missouri and that accompanying him was Joseph John Leavey, Jr. Plaintiff states that on said date, the said automobile struck a pillar on a bridge when it was being driven at an excessive rate of speed and that as a result of said collision, both Richard K. Pittman and Joseph John Leavey died. At the time of his death Joseph John Leavey, Jr., was a minor of the age of 17 years.

"Plaintiff states that the application for insurance made by Richard K. Pittman was false and untrue in that insurance had been declined to the said Richard K. Pittman, because of an accident which he had previously had on March 19, 1960, in Platte County, Missouri. The said Richard K. Pittman had also been arrested for careless driving and fined in Magistrate Court; had been arrested by police and fined for speeding and again for careless driving; that all of said facts were known to the said Richard K. Pittman at the time he signed the application for insurance; that he carefully withheld the same from the plaintiff, thereby defrauding the plaintiff, and plaintiff states that had it known of the true facts and had it known that the representations made by the said Richard K. Pittman were not true, that the policy of insurance referred to herein would never have been issued by it for the reason that the insurance so written is based upon an 'experience' rating which is less than the regular rate because of the so called 'safe driving experience' of the applicant.

"Plaintiff states that the said Bernadean Pittman, administratrix of the estate of Richard K. Pittman, is now making claim for medical benefits under the insurance policy and that the defendants Leavey, as surviving parents of the deceased minor Leavey, are making a claim and threatening suit under and by vir-

tue of the wrongful death statute of the State of Missouri."

The defendants admitted the happening of the accident which resulted in the death of Pittman and Leavey, Jr. They asserted that before the issuance of the policy in suit to Pittman the plaintiff had knowledge of all facts material to the risk, and that if Pittman made any material false statements—which defendants deny—the statements were made innocently and without intent to defraud. Mrs. Pittman in her answer set up a counterclaim for $2,000 for funeral expenses and damage to the insured automobile.

The defendants requested a jury trial. The case was tried to a jury for two days commencing January 31, 1961.

The evidence of the plaintiff showed that the application signed by Pittman for the policy in suit contained the following questions and answers:

"Has any driver had automobile insurance declined or cancelled?" Answer: "No."

"Has any driver had his driver's license revoked, suspended or restricted?" Answer: "No."

"Has any user been involved in an accident (as a driver) in the past three years?" Answer: "No."

"Does any driver have a physical deficiency or impairment?" Answer: "No";

that the policy which was issued contained the paragraph "16—Declarations," as is stated in the complaint, and is hereinbefore quoted; and that on March 19, 1960, Pittman, who then had a policy of automobile liability insurance with the State Farm Mutual Insurance Company, was involved in an accident described in a statement made by him to that Company on March 28, 1960, as follows:

"My name is Richard Pittman. I live at the White City Hotel, Parkville, Missouri. I am 35 and work for Corn Products. On March 18th Donald Pauley of Riverside, Missouri, and I were taking some friends home. I was driving Paul-

ey's 1953 Chevrolet. We took Jess Clark to his home, 311 West Eighth Street, Kansas City, Missouri, at about midnight. We left there and began our trip to Riverside. The highways were slightly wet from melting and falling snow. We were going south on 71 Highway and at about four miles north of Riverside we stopped to urinate. 71 Highway is a dual lane highway at this point. We stopped over the side of a hill about 75 feet from the crest. The snow was banked high on the shoulder about three feet from the edge of the highway. I pulled the car over as far as I could against the snow. There was still about half of Pauley's car on the highway. The lights were on and working. We finished urinating and got back into the car when a 1960 Ford struck the car on the left rear bumper and fender. The impact was about a foot and a half from the left side on the bumper. The bumper and fender were damaged but the trunk lid was not hurt. The damage on the Ford was on the right bumper, fender and headlight. I saw the Ford coming in the rearview mirror, but could not say how fast he was going or what efforts he made to avoid the accident. Both Pauley and I received a good jolt from the impact, but haven't felt any ill effects as yet.

"The Missouri State Patrol was called to investigate the accident. I was given a ticket for careless driving and have to go to court in Platte City on the 30th of March. I was driving Pauley's car at the time because he does not have a driver's license. * * * "

It appears from the record that Pittman, as a result of the accident, was fined $16 for careless driving.

John Tompkins, who for almost seven years prior to February 15, 1960, had been an agent for the State Farm Mutual Insurance Company, testified that he met Pittman before March 31, 1960; that when he (Tompkins) quit State

Farm and set up a general insurance business on February 15, 1960, he circularized the policyholders of that company with whom he had been in contact, including Pittman; that Pittman came alone to Tompkins' office in his home in the evening of April 1, 1960, when the application for insurance was written for the policy in suit; that Mrs. Tompkins did the typing; that Pittman answered "No" to the four questions in the application; that he paid the premium; that the application and the premium were forwarded to the home office of the plaintiff; that Tompkins was told by Pittman that he no longer had State Farm insurance; that the first time Tompkins knew of Pittman's accident of March 19, 1960, was after Pittman's death. The testimony of Mrs. Tompkins was corroborative of that of her husband. She said she knew Donald Pauley, and that he was not with Pittman the evening of April 1, when the application was signed.

The branch manager for the plaintiff in the Kansas City area testified that he appoints agents and instructs them as to acceptable risks; that the company does not write insurance for persons who have a previous accident record or a record of excessive violations; that the company "distinguishes as to 'chargeable' accidents"; that: "Where a driver in no way contributes to an accident, such as his parked car being struck, he is not charged with it. It is pretty much within the agent's discretion from whom he accepts or refuses an application."

This was, in substance, the plaintiff's case as shown by the printed record on appeal, which is not as complete, clear and precise as it should be.

At the close of the plaintiff's evidence the defendants made a motion for a directed verdict, without stating any specific grounds therefor as required by Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S.C. The motion was overruled. They called Donald Pauley as a witness. He testified that Pittman occasionally drove his (Pauley's) car because Pauley had no driver's license (it

having been cancelled by the State almost a year before March 19, 1960), and told of the accident of March 19, 1960, when Pittman was driving Pauley's car and they stopped, partly on and partly off the highway, and were struck from the rear. Pauley further testified that he was with Pittman on April 1, 1960, when, in Tompkins' office, Pittman signed the application for insurance, and that Pittman introduced Pauley to Tompkins, saying, "This is the guy that had the Chevrolet I was telling you about, that I was driving."

The trial judge, just before the defendants rested, told counsel, in effect, that he intended to instruct the jury that the accident of March 19, 1960, was an accident in which Pittman was involved as a driver within the meaning of the law and within the meaning of the policy. The record shows that counsel for the defendants said: "Of course, we are maintaining he was the driver but in addition we are saying that this wasn't a material misrepresentation."

The plaintiff, at the close of all the evidence, made a motion for a directed verdict on the ground that, under the evidence, the plaintiff was entitled to judgment as a matter of law. This motion the court took under advisement. The defendants made no motion for a directed verdict at the close of all of the evidence. They submitted to the court no requests for instructions.

The trial judge informed counsel, just before they made their closing arguments, that he would tell the jury: "You are instructed that Richard Pittman within three years before the date on which the policy in evidence was issued had an automobile accident within the meaning of that term as used in the application"; and that the sole question that would be submitted to the jury to be answered "Yes" or "No" would be: "Do you find that at the time the application was signed and the policy issued, the insurer acting through its agent had knowledge of such automobile accident?"

In instructing the jury, the trial judge, after outlining the evidence relative to Pittman's accident of March 19, 1960, said:

"Now, under those circumstances it was the opinion of the Court, as a matter of law, that he had had an accident and the Court will say to you that it was his duty to reveal that fact to the insurance agent at the time he signed this application, unless the insurance agent already knew it, and if he had concealed the evidence, under this evidence if he concealed that fact and did not reveal it to the agent and the agent did not have any knowledge of it at the time this application was signed, then it was a material misrepresentation or a failure to advise the agent concerning a material fact and would void the policy, and the only question for you members of the jury to determine is whether or not the agent had knowledge at the time this application was signed as to whether or not he had had that accident."

The jurors answered the one interrogatory submitted to them, "Yes".

The only objection taken by the defendants to the charge of the court to the jury reads as follows:

"Defendants object to the Court having withdrawn the question of whether or not the plaintiff relied upon the representations of the deceased, Richard Pittman, from the jury and for withdrawing from the jury's consideration the question of whether or not this was a chargeable accident within the terms and definitions of the policy."

The plaintiff, on February 6, 1961, filed two motions, one for judgment notwithstanding the verdict, and, the second, for a new trial. The court, on March 27, entered an order (1) ruling that there was no substantial evidence warranting the submission of the case to the jury, and that the plaintiff's motion for a directed verdict should have

been sustained, and (2) setting aside the verdict and granting the plaintiff judgment declaring the policy in suit null and void. Judgment in accordance with the order was entered March 30, 1961.

On April 6 and 7, the defendants filed motions asserting that the trial court had erred in entering judgment for the plaintiff. They asked that the verdict of the jury be reinstated, that judgment be entered for the defendants, and that the motion made by the plaintiff for a new trial be ruled upon. By an order of May 31, 1961, the motions of the defendants for judgment in their favor were denied, the motion of the plaintiff for a new trial was also denied, and the judgment of March 30, 1961, was reentered. This appeal followed.

■ Judge Duncan, a Missouri federal judge of long experience, tried this case. He concluded that the false statement made by Pittman in his application for insurance was, as a matter of Missouri law, material and had the effect of avoiding the policy. If that was a permissible conclusion, the judgment appealed from should be affirmed. See and compare: Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643, 53 A.L.R.2d 1376; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734; Village of Brooten v. Cudahy Packing Company, 8 Cir., 291 F.2d 284, 288–289.

The instant case presents virtually the same problem that confronted Judge Collet while he was a District Judge, in the case of Ettman v. Federal Life Ins. Co., D.C.E.D.Mo., 48 F.Supp. 578, the judgment in which was affirmed by this Court in 137 F.2d 121. There, as here, it was contended on behalf of the insured that the misrepresentation relied upon to avoid the policy must be not only material and untrue but also intentionally and fraudulently made. Judge Collet ruled that where a policy is conditioned upon the truth of the representations in an application, a material misrepresentation, although innocently made, will avoid the policy. The policy in that case,

like the policy in this, was a Missouri insurance contract conditioned upon the truth of the representations made to procure its issuance.

In Dixon v. Business Men's Assurance Co. of America, 365 Mo. 580, 588, 285 S.W.2d 619, 625, which had to do with alleged material misrepresentations in an application for an accident and health policy, the Supreme Court of Missouri, quoting from Houston v. Metropolitan Life Ins. Co., 232 Mo.App. 195, 205, 97 S.W.2d 856, 860, said (page 625 of 285 S.W.2d):

"The rule in this state, as we understand it, is that where material representations made in an application for a policy of life insurance are warranted to be true, or the policy is conditioned upon the truth of the representations, or provides that the falsity of the representations shall avoid the policy, then the representations, if in fact untrue, will avoid the policy, though the representations were innocently made. * * *"

In Minich v. M. F. A. Mutual Insurance Co., Mo.App., 325 S.W.2d 56, 57, the Kansas City Court of Appeals stated the law applicable to the furnishing by an applicant for automobile liability insurance of false information, as follows (page 57 of 325 S.W.2d):

"'A material misrepresentation made by an applicant for insurance, in reliance on which a policy is issued to him, renders the policy voidable * * *.' State Farm Mutual Automobile Insurance Co. v. West, D.C., 149 F.Supp. 289, 305; Gooch v. Motors Insurance Co., Mo.App., 312 S.W.2d 605, 608. This is true whether such misrepresentation be made intentionally or through mistake and in good faith. State Farm Mutual Automobile Insurance Co. v. West, supra; Smith v. American Automobile Insurance Co., 188 Mo. App. 297, 303-304, 175 S.W. 113. An application for a policy of insurance is an offer, intended to be relied upon and to become a part of the contract, when accepted. Absent fraud or mistake one is bound by his written contract and an application as an offer is contractual in nature. Dickinson v. Bankers Life & Casualty Co., Mo.App., Springfield, 283 S. W.2d 658, 662."

In State Farm Mutual Automobile Insurance Co. v. West, D.C.Md., 149 F. Supp. 289 (cited in the Minich case, supra), the rule as to the effect of material misrepresentations in applying for insurance is stated as follows (pages 304–305 of 149 F.Supp.):

"* * * * A material misrepresentation made by an applicant for insurance, in reliance on which a policy is issued to him, renders the policy voidable as against the applicant and all who stand in no better position, whether such misrepresentation be made intentionally, or through mistake and in good faith (Silberstein v. Massachusetts Mutual Life Insurance Co., 1947, 189 Md. 182, 55 A.2d 334; Baker v. Continental Casualty Co., 1953, 201 Md. 464, 474, 94 A.2d 454; Hancock Mutual Life Insurance Co. of Boston, Massachusetts, v. Adams, 1954, 205 Md. 213, 221, 107 A.2d 111; A.L. I. Restatement, Contracts, sec. 476). Where evidence of bad faith or falsity or materiality is uncontradicted or clear and convincing, the court may so rule as a matter of law. * * *"

See, also, Cohen v. Fort Dearborn Casualty Underwriters, 221 Mo.App. 741, 745–746, 285 S.W. 1024, 1026, and Smith v. American Automobile Ins. Co., 188 Mo. App. 297, 302–303, 175 S.W. 113, 114–115.

The Supreme Court of the United States, in Phoenix Mut. Life Insurance Co. v. Raddin, 1887, 120 U.S. 183, 189, 7 S.Ct. 500, 502, 30 L.Ed. 644, had this to say about the effect of false answers to questions in an application for insurance:

"Answers to questions propounded by the insurers in an application for

insurance, unless they are clearly shown by the form of the contract to have been intended by both parties to be warranties, to be strictly and literally complied with, are to be construed as representations, as to which substantial truth in everything material to the risk is all that is required of the applicant. Moulor v. American Ins. Co., 111 U.S. 335 [4 S.Ct. 466, 28 L.Ed. 447]; Campbell v. New England Ins. Co., 98 Mass. 381; Thomson v. Weems, 9 App.Cas. 671.

"The misrepresentation or concealment by the assured of any material fact entitles the insurers to avoid the policy. But the parties may by their contract make material a fact that would otherwise be immaterial, or make immaterial a fact that would otherwise be material. Whether there is other insurance on the same subject, and whether such insurance has been applied for and refused, are material facts, at least when statements regarding them are required by the insurers as part of the basis of the contract. * * *"

See, also: Didlake v. Standard Insurance Co., 10 Cir., 195 F.2d 247,33 A.L.R. 2d 941; Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 1896, 6 Cir., 72 F. 413, 433–442, 38 L.R.A. 33 (opinion by Taft, Circuit Judge, subsequently Chief Justice of the United States); 29 Am.Jur., Insurance, § 702, pages 964–965; 5A Am.Jur., Automobile Insurance, § 13, pages 16–17; Appleman, Insurance Law and Practice, Vol. 12, § 7271, pages 374–375; Vance on Insurance, Third Edition, Sec. 62, pages 375–378, and Sec. 67, page 386.

 The trial court was, in our opinion, justified in setting aside the verdict of the jury finding that Tompkins, the agent of the plaintiff, on April 1, 1960, at the time Pittman applied for the policy in suit, knew that he had been involved in an accident on March 19. This, because the evidence upon which the jury's finding was based was too unsubstantial to sustain it; and not because the verdict was merely advisory, as the plaintiff seems to think.[1]

 The jury could have believed that Pauley was present in Tompkins' office on April 1, 1960, when Pittman signed the application for insurance, and that he introduced Pauley to Tompkins as " * * * the guy that had the Chevrolet I was telling you about, that I was driving." But Pauley testified that he had had no driver's license for about a year before that time, and that Pittman occasionally drove his (Pauley's) car; so that the remark attributed to Pittman, while consistent with the hypothesis that he may have been telling Tompkins about driving the Chevrolet on March 19, is not inconsistent with the hypothesis that he (Pittman) may have been talking about some other occasion when he drove the Chevrolet. Evidence which is equally consistent with two conflicting hypotheses tends to establish neither. Massachusetts Protective Ass'n, Inc. v. Mouber, 8 Cir., 110 F.2d 203, 206; Ford Motor Co. v. Mondragon, 8 Cir., 271 F.2d 342, 345; Bennett v. Wood, 8 Cir., 271 F.2d 349, 351. What Tompkins may have been told, if anything, by Pittman about driving the Chevrolet is left to conjecture.

 It cannot, of course, be said with certainty that the Supreme Court of Missouri might not rule that the question of the materiality of a false representation upon which the insurer relies to avoid liability on a policy such as that in suit is an issue of fact for the jury. See Smith v. American Automobile Ins. Co., supra, page 303 of 188 Mo.App., page 115 of 175 S.W. We think, however, that the conclusion of the trial court that the misrepresentation of the insured in his application avoided the policy as a matter of

1. This case was triable by jury as of right. Johnson v. Fidelity & Casualty Company of New York, 8 Cir., 238 F.2d 322, 326; Curry v. Pyramid Life Ins. Co., 8 Cir., 271 F.2d 1, 4–6; Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988.

Missouri law, was a permissible one. This Court establishes no rules of law for the State of Missouri or any other state. National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741.

The judgment appealed from is affirmed.