**M.F.A. MUTUAL INSURANCE COMPA-NY, a Corporation, Plaintiff,**

v.

**Roy DIXON, Administrator of the Estate of William Kenneth Dixon, Deceased, Lula Snyder and Elva L. Hamilton, Defendants.**

**No. 1866.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

July 20, 1965.

Crouch, Blair & Cypert, Springdale, Ark., for plaintiff.

Charles W. Atkinson, Murphy & Burch, Carlos Hill, Fayetteville, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

In this action commenced December 17, 1964, the plaintiff, M.F.A. Mutual Insurance Company, seeks a declaratory judgment under 28 U.S.C.A. § 2201 as to its rights and liabilities under a contract of liability insurance issued by it to William K. Dixon, now deceased. The plaintiff is a corporation organized under the laws of the State of Missouri with its principal place of business at Columbia, Missouri. The defendant Roy Dixon, the Administrator of the Estate of William Kenneth Dixon, deceased, is a citizen and resident of Washington County, Arkansas. The defendants Lula Snyder and Elva L. Hamilton are citizens and residents of Washington County, Arkansas.

In its complaint the plaintiff alleged that it issued a policy of liability insurance, No. 316728601, to William Kenneth Dixon, covering a 1960 Oldsmobile, upon the representation in the insured's application that he had never been arrested for any offense or convicted in any court; that the insured was involved in an automobile accident April 9, 1964, which resulted in his death. That the defendants Lula Snyder and Elva L. Hamilton, passengers in the car driven by the decedent, instituted suit against the defendant Roy Dixon, Administrator of the Estate of William Kenneth Dixon, deceased, in the Washington County Circuit Court on September 2, 1964. That the plaintiff would not have issued the policy to the decedent but for the representations in the application that he had not been arrested or convicted of any offense. That the answers in the application were false in that the deceased had been convicted of numerous offenses, including driving while under the influence of intoxicating liquors, and that this representation was material to the risk. The defendant prayed that it be relieved of any duty to defend the suit against the estate of the insured in the Washington County Circuit Court and that this court enter a declaratory judgment determining the rights and liabilities of the plaintiff and that the policy be declared void and unenforceable and of no effect because of the misrepresentations by the insured in his application for the policy.

The defendant Roy Dixon, Administrator of the Estate of William Kenneth Dixon, deceased, in his answer generally denied the allegations of the plaintiff in its complaint, but admitted that the deceased was in an accident on or about April 9, 1964, which resulted in his death

and admitted that the defendants Snyder and Hamilton had filed suit against him, as Administrator, in the Circuit Court of Washington County, Arkansas. The Administrator further stated in his answer that the policy in question is based upon an application of December 30, 1963, and that the plaintiff had already undertaken and agreed to defend the action pending in the Washington County Circuit Court. The defendant Dixon, Administrator, by counterclaim prayed for judgment against the plaintiff for damages to the automobile in the sum of $1,545.00 and medical payments in the sum of $500.00; that demand had been made upon plaintiff for these benefits under the policy, which plaintiff has refused to pay, and therefore the defendant prays that he recover $2,045.00 plus his attorney's fee and 12 percent penalty; all other substantive allegations of the plaintiff not specifically admitted as heretofore set out are denied.

Plaintiff in its reply of January 27, 1965, to the answer of Dixon and counterclaim, generally denies the allegations contained in the answer and asked the same relief as recited above in its complaint.

On February 4, 1965, the individual defendants Snyder and Hamilton filed their separate answer in which they admitted filing suit against Roy Dixon as Administrator of the Estate of William Kenneth Dixon, but otherwise allege that they are without knowledge as to any allegations of either the plaintiff or the defendant Dixon and pray that the complaint be dismissed as to them.

On June 16, 1965, the case was tried to the court without the intervention of a jury, the parties appearing by their respective attorneys. Ore tenus and documentary evidence, including stipulations of facts, were introduced. At the conclusion of the trial the case was submitted to the court and taken under advisement with leave granted to the parties to submit briefs in support of their respective contentions, which have been received and considered by the court. The case is now ready for disposition upon the pleadings, exhibits, stipulations and evidence introduced at the trial.

The following facts are established by the evidence and of which there is no substantial dispute. The deceased, William Kenneth Dixon, applied to the plaintiff's agent, Troy Hightower, of Springdale, Arkansas, May 3, 1963, for liability insurance policy covering a 1959 Chevrolet, Bel Air, four-door automobile. The application which was signed by the deceased contained several questions. The plaintiff's agent, Hightower, elicited the answers to the questions from the applicant and inserted the answers himself in the blanks. The application contains the following questions and answers which are pertinent:

"6. Has applicant or any driver EVER:

    a. Been insured under the Assigned Risk Plan?     No.

    b. Been refused, cancelled or declined auto insurance or given notice of intention to refuse, cancel or decline insurance?     No
       If yes give month and year     ——

    c. Had any auto accidents?     No

    d. Been arrested for any offense or convicted in any court?     No

    e. Had any license suspended or revoked?     No

    f. Had high school driver training?     No

"7. Does applicant or any driver:

    a. Have any physical impairment?     No

    b. Use to any extent any alcoholic beverages or drugs?     No"

At the conclusion of the agent's questioning the applicant and inserting his answers in the proper blanks, the deceased signed the application and the agent also signed the application and forwarded it to the plaintiff. Subsequently, the plaintiff executed a policy upon the application.

On December 30, 1963, the deceased made application to the plaintiff through its agent, Troy Hightower, for a change and substitution of a 1960 Oldsmobile in place of the Chevrolet, at which time he reaffirmed the answers to the questions in the application for coverage of the Chevrolet as heretofore set forth.

On April 9, 1964, the deceased was involved in an automobile accident in Washington County, Arkansas, as heretofore referred to in connection with the action commenced against his Administrator by the individual defendants, Snyder and Hamilton. After demand was made upon the plaintiff to defend the suit, it declined and tendered the premiums to the deceased's estate on the grounds that the deceased insured in his application had fraudulently represented facts material to the risk.

The fundamental consideration in determining the plaintiff's rights, duties and liabilities under the policy is whether or not the plaintiff has proved that the insured made false representations in his application for the policy, and, if they were in fact false, whether or not the plaintiff's evidence tendered to establish this is competent.

The issues as the court views the record are: (a) whether or not the insured, William Kenneth Dixon, made fraudulent material representations in his application of May 3, 1963; and (b) the admissibility of the criminal convictions of the deceased in various municipal courts for the offenses of reckless driving and driving while under the influence of intoxicating liquors. The plaintiff in its brief contends that the representations by the deceased that he had not been arrested or convicted are material to the risk. The plaintiff further contends that it would not have issued the policy had the deceased truthfully answered question 6(d) in his May 3, 1963, application and questions A and B at the bottom of his application for substitution of automobiles on December 30, 1963. The defendant Roy Dixon, Administrator, contends (1) that the application, although containing statements that the deceased had not been arrested or convicted of any offense, was not material to the risk for the reason that the policy was not issued solely on the basis of this application because the insured had carried numerous policies in the past with the same insurer and it was not therefore a stranger to the insured; and (2) that the plaintiff has failed to establish by competent evidence that the representations in the application were fraudulent.

## DEAD MAN STATUTE

The defendants objected to the proffer of the testimony of all witnesses with respect to transactions concerning the insured deceased. The defendants predicated this objection upon Schedule § 2 of the Arkansas Constitution, known as the Dead Man Statute, which provides that in actions by or against executors, administrators or guardians, neither party to the action shall be allowed to testify against the other as to any transactions with or statements of the deceased unless called by the opposing party. The statute, of course, is narrowly construed. In Mosley v. Mohawk Lumber Co. (1916), 122 Ark. 227, 183 S.W. 187, relied upon by the plaintiff, the administratrix of the estate sought recovery for the death of the intestate alleged to have been caused by the negligence of the lumber company. The administratrix objected to the proffer of the testimony of the manager of the corporate defendant relative to the directions given by him to the deceased regarding the operation of a train which injured the deceased. The Supreme Court, in approving the admissibility of the testimony by the manager of the corporation, at page 234 of 122 Ark., at page 189 of 183 S.W., stated:

810

"The statute provides that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transactions with, or statement of, the testator, intestate, or ward, unless called to testify thereto by the opposite party. Section 3093, Kirby's Digest.

"This statute was only intended to prevent a party to the suit from testifying under the conditions named, and the manager of the corporation was not a party to the suit, within the meaning of the statute, which does not provide that persons interested in the result of the litigation shall be excluded from testifying.

"The corporation, the Mohawk Lumber Company, was the defendant in the suit, and the party thereto, and not Wingfield, its general manager."

In People's Savings Bank v. McInturff, (1921) 147 Ark. 296, 227 S.W. 400, the Supreme Court held that the testimony of the agent or representative of an interested party is admissible with respect to statements and transactions involving the deceased. The Supreme Court again recited the rule that employees of a corporation which is a party to a suit are not themselves parties, and they may testify as to statements and transactions involving the deceased. At page 301 of 147 Ark., at page 401 of 227 S.W., the court stated:

"The only reason a declaration or admission made by the deceased to a party to the suit, pertaining to a transaction between them, is not admissible is because the statute bars the admission of such testimony. The prohibition does not extend to the agent or representative of the interested party. Section 4144, Crawford & Moses' Digest; Nolen v. Harden, 43 Ark. 307; McRae v. Holcomb, 46 Ark. 306; Brown v. Brown, 134 Ark. 380, 203 S.W. 1009."

In Smith v. North Louisiana Sanitarium (1930), 181 Ark. 986, 26 S.W.2d 97, the plaintiff sought to recover from the estate of the deceased the value of medical services and hospital fees for services performed for a third party. The hospital was operated as a partnership and not a corporation. The principal partner of the hospital testified as to an oral promise by the deceased to pay for the medical services given another party. An objection was raised on behalf of the estate as to any testimony by the doctor as to statements and transactions involving the deceased. The Supreme Court, in reviewing its prior cases, including the Mohawk Lumber Company case discussed above, again reiterated that the statute is narrowly construed and applies only to actual parties to the suit. It does not extend to interested parties or officers, agents or employees of parties to the suit. The court at page 989 of 181 Ark., at page 98 of 26 S.W.2d, stated:

"In considering the testimony relevant to the rights of the appellee sanitarium, it must be borne in mind that Abrahamson was not a party to the suit as to it, although suing for himself and his partner, Dr. Herold. The sanitarium is a corporation, and Dr. Abrahamson is its president. The testimony of the officers of the corporation would not be incompetent under section 4144 of Crawford & Moses' Digest which provides: ' * * * In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party. * * *' We have held that this statute applies only to those who are technically parties to the suit, and cannot be extended to parties interested in its result, McRae v. Holcombe, 46 Ark. 306; Stanley v. Wilkerson, 63 Ark. 556, 39 S.W.

1043, nor does it include officers or agents of a corporation defendant. Mosley v. Mohawk Lumber Co., 122 Ark. 227, 183 S.W. 187. Therefore Dr. Abramson was a proper witness in so far as the sanitarium was concerned as to transactions had with the intestate. As to his own claim and that of Dr. Herold, his testimony was excluded by the trial court, but, as there were other competent witnesses testifying as to the agreement with respect to the employment of the physicians, there was legal testimony to support the finding of the court as to the validity of the claim of the doctors."

■■ It is thus well established that the Dead Man Statute precludes admission of testimony of parties to a suit with respect to statements and transactions involving a deceased whose administrator, executor, or guardian is a party, but the prohibition does not extend to the employees, agents or servants of the parties. It is interesting to note how narrowly the Supreme Court has construed the Dead Man Statute in Arkansas. For example, in Brown v. Brown, (1918) 134 Ark. 380, 203 S.W. 1009, the Supreme Court approved the admissibility of the testimony of a party to a controversy over the objection of the opposite party based upon a transaction involving the deceased. The Supreme Court held in that case that although a party to the suit was testifying as to a statement involving the deceased, the party testifying had no interest in the outcome thereof, and therefore the statute did not prohibit the admission of her testimony. As applied to the instant controversy, the testimony of the employees, agents and servants of the plaintiff, M.F.A., regarding statements and transactions with the deceased insured is therefore admissible as they are not parties to this controversy.

## ADMISSIBILITY OF PRIOR CRIMINAL CONVICTIONS

■ It seems well established as a matter of statute and interpretation by the Supreme Court of Arkansas that the municipal court records of convictions of violation of traffic laws of any defendant are not admissible in any civil action against him.

Ark.Stat.Ann., Sec. 75–1011, (1963 Supp.), provides:

"No record of the forfeiture of a bond or of the conviction of any person for any violation of this act shall be admissible as evidence in any court in any civil action."

In Garver v. Utyesonich, (1963) 235 Ark. 33, 356 S.W.2d 744, the plaintiff sought to introduce the municipal court records of Hot Springs, Ark., which reflected a conviction of the defendant for failing to yield the right-of-way. The conviction was for conduct which was also the basis of the civil action between the parties. The Deputy Clerk of Hot Springs Municipal Court identified the docket sheet and testified therefrom stating that a plea of guilty had been entered to the charge of failing to yield the right-of-way. The court at page 38 of 235 Ark., at page 747 of 356 S.W.2d stated:

"This witness did not testify that she was present in court and heard the plea entered and her testimony from the docket sheet on the various details of the case just as effectively introduced a record of conviction in the municipal court for a violation of the statute as if the docket sheet had been made an exhibit to her testimony.

"This cannot be done. The statute provides [Ark.Stats. § 75–1011]:

" 'Record of conviction inadmissible in a civil action.—No record of the conviction of any person for any violation of this act shall be admissible as evidence in any court in any civil action.'

"The act referred to applies to traffic violation and the language of the Legislature makes clear its intent that the record of the municipal court cannot be introduced in actions of this kind. As further evidence of

Legislative intent, Act 21ǒ of the Acts of 1961 provides that no record of the forfeiture of a bond or of any conviction of any person for any violation of this Act [traffic violation] shall be admissible in any court in any civil action. Under these enactments, the evidence of the traffic violation was not admissible."

The above quoted portion, although affirmatively prohibiting the introduction of the municipal court record of conviction, does infer that the witness could have testified had she heard the plea entered as to what the plea was, and it would be admissible as an admission. In this same volume of the Arkansas Reports the Supreme Court in Harbor v. Campbell, (1962) 235 Ark. 492, 360 S.W. 2d 758, recognizing and reciting the rule that a municipal court record of a conviction cannot be introduced, further stated that the plea of guilty as reflected in the records was competent as a declaration against interest. The court at page 492, at page 759 of 360 S.W.2d, stated:

"I. Conviction For Traffic Violation. Appellants sought to introduce in evidence a certified copy of the record of the Municipal Court in which appellee had paid a fine for 'failure to yield the right-of-way,' which charge arose because of the traffic mishap here involved. The Trial Court was correct in refusing to allow the Municipal Court record to be introduced in evidence. Section 75–1011 Ark.Stats. says:

" 'No record of the conviction of any person for any violation of this act shall be admissible as evidence in any court in any civil action.' Our recent cases of Garver v. Utyesonich, 235 Ark. 33, 356 S.W.2d 744; and Girard v. Kuklinski, 235 Ark. 337, 360 S.W.2d 115, are in point.

"II. Plea of Guilty For Traffic Violation. When Appellee Campbell was testifying, appellants sought to interrogate him to show that for this identical traffic mishap Campbell had entered a plea of guilty in Municipal Court to the charge of failure to yield the right-of-way. The Trial Court refused this evidence of a plea of guilty; and such ruling was error. A plea of guilty for traffic violation for the identical traffic mishap is certainly a declaration against interest; and such plea of guilty is as admissible as any other declaration against interest in any other case. In Covington v. Little Fay Oil Co., 178 Ark. 1046, 13 S.W.2d 306, we said: 'It is well settled that any statements made by a party, to a suit against his interest, bearing on material facts, are competent as original testimony.' Appellants sued appellee for damages, alleging appellee had been guilty of six acts of negligence. One of these was 'failing to have his car under proper control,' and another was 'failing to exercise ordinary care under the existing circumstances.' Appellee's plea of guilty to 'failure to yield the right-of-way,' had clear evidentiary value on the alleged acts of negligence. In Miller v. Blanton, 213 Ark. 246, 210 S.W.2d 293, 3 A.L.R.2d 203, we said: 'Appellant Miller testified that a charge of "reckless driving" was filed against him as a result of this collision and that he pleaded guilty to this charge. * * * This testimony as to appellant's plea of guilty was competent as showing a deliberate declaration against interest by said appellant. 20 Am.Jur. 545.' "

Therefore, a plea of guilty in the municipal court action is admissible as a declaration against interest or an admission although that portion of the records which reflects a conviction is not admissible. In addition, it is well established that the arresting officer may testify as to what transpired in his presence, and if he is present in the court room at the time the case is heard, he may testify in a subsequent civil action as to any plea the defendant entered in his

presence in the municipal court criminal action.

In the instant action Tom Goodwin, a trooper of the Arkansas State Police, stationed at Springdale, Ark., who personally knew the deceased Dixon, investigated the accident which resulted in Dixon's death. He had on a prior occasion arrested Dixon for burglary and grand larceny to which the deceased pled guilty on October 30, 1962, and was given a suspended sentence. City Policeman Herman McCullough of the Springdale Police Department, who personally knew Dixon, assisted in the arrest of Dixon for burglary. The testimony of these two witnesses as to their personal acquaintance with the deceased and their arrest of him for the crime of burglary is competent evidence and relevant to the issue raised by the plaintiff's complaint and its contention that the deceased fraudulently represented in his application that he had never been arrested for any crime.

Plaintiff also tendered the testimony of Ann Arrington, Deputy Municipal Clerk of Springdale, Ark. She had no personal knowledge of the deceased and could only identify the records and testify as to what the records reflected. This evidence tendered by the plaintiff was inadmissible because of the prohibitions against its admissibility outlined above in the statute and in the Garver case, supra. The plaintiff also tendered testimony of Morgan Carson and George Davis, policemen in the Cities of Springdale and Fayetteville, Ark., who testified as to their arrest of the deceased for drunken driving. The testimony of these two witnesses was competent and relevant to the issue of the deceased's prior arrests and the misrepresentation contained in the initial application and in the application for the substitution of the 1960 Oldsmobile for the 1959 Chevrolet.

The defendants further contend that the felony conviction record of the deceased is not admissible in any civil action. The character of the deceased is not itself an issue in the instant action, and thus the problem of criminal convictions tendered to impeach the credibility of a witness is not presented. The defendants rely on Smith v. Dean, (1956) 226 Ark. 438, 290 S.W.2d 439, and Horn v. Cole, (1942) 203 Ark. 361, 156 S.W.2d 787, which establish as the substantive rule of evidence that a judgment of conviction is not admissible to prove the facts upon which it is based. With this principle the court is in complete accord. However, the issue as presented by the misrepresentation of the deceased as to his prior convictions is not the underlying fact but whether or not he had been convicted. The issue is not whether or not he engaged in the conduct alleged to be the basis of the conviction but whether or not he was in fact convicted. As stated in Horn v. Cole, supra, at page 366 of 203 Ark., at page 789 of 156 S.W.2d, the Supreme Court quoted with approval from Ruling Case Law:

" 'The general rule is that a judgment in a criminal prosecution is no bar to a subsequent civil action arising from the same transaction, and that the record of the criminal cause is not competent evidence in the civil action, save for the single purpose of proving its own existence, if that becomes a relevant fact, in which case not only is it admissible, but it is conclusive for the purpose of establishing the fact that it has been rendered. It cannot, however, be given in evidence in a civil action to establish the truth of the facts on which it was rendered. Hence one prosecuted and convicted of a criminal charge is not thereby estopped from maintaining a civil action and proving therein that he was innocent of the offense of which he was convicted'. 15 R.C.L., p. 1000, sec. 476."

The plaintiff tendered the testimony of the Circuit Clerk of Washington County with respect to the criminal record of the deceased in that county. The Circuit Clerk had no personal knowledge of the transactions reflected in the rec-

ords of the Circuit Court of Washington County, but did identify the records, which of course speak for themselves. A copy of the criminal conviction of the deceased is therefore admissible with respect to the issues of arrest and conviction. As heretofore stated, it is not, of course, any evidence of the facts upon which it was rendered but merely is proof of its rendition. The insured deceased represented that he had not been convicted. Therefore, these records are relevant and admissible for the limited purpose of showing such conviction. Again the court deems it necessary to emphasize that the Circuit Court criminal conviction is not admissible in this controversy to establish the facts upon which it might have been rendered, but only for the limited purpose of showing that it was in fact rendered. The sole issue with respect to the conviction and arrest were whether or not the insured had in fact been arrested or convicted. As heretofore discussed, the Municipal Court records reflecting the convictions of traffic violations are not admissible even to the limited issue of the conviction itself because of the statutory prohibition against their admission. Although there seems to be no sound reason for distinguishing between Municipal Court convictions and Circuit Court convictions on the limited issue of whether or not the deceased had in fact been convicted, the Legislature has expressly prohibited introduction of the records for traffic violations, Ark.Stats.Ann., Sec. 75–1011.

■ The plaintiff insurer, in support of its contention that the representations were fraudulent and material and that the policy should be declared void and of no effect, cites Apperson v. United States Fidelity & Guaranty Co., (5 Cir. 1963) 318 F.2d 438, and Pittman v. West American Ins. Co., (8 Cir. 1962) 299 F.2d 405. There can be no doubt that the representations as to the insured's arrest and conviction were material to the risk involved in the issuance of the policy. The effect of a misrepresentation, such as those involved here, is stated in 12 Appleman, Insurance Law and Practice, Sec. 7293 at page 394, as follows:

"Whether any particular false statement by the insured in his application avoids the policy has been held to depend upon the intention of the parties respecting such statement. * * * It has even been stated that the parties may contract to make a fact material which otherwise would be immaterial, or make immaterial a fact which otherwise would be material. Discharge of an insurer from liability because of the false statement of the insured has been held to depend upon whether the parties agreed that the truth of such statement should be a condition precedent to liability, or, if not, whether the fact was one whose verity was understood to be material or immaterial.

"The view commonly asserted by many courts construing the subject of misrepresentation literally, and often asserted at common law, and in the absence of statute, is that a policyholder cannot avoid responsibility for representations in a signed application for insurance, in the absence of fraud or mistake. Such answers have been considered a material or essential part of the contract of insurance, avoiding liability of the insurer when misrepresentations are shown, irrespective of whether they were made intentionally or in good faith. This is particularly true where validity of the policy is expressly conditioned upon truthfulness of the answers, or the parties have stipulated that the insurer shall be released if any answer is false."

As applied to the instant action, the application of the insured contains the following statement with respect to the issuance of the policy based upon the application itself:

"I hereby make application for an insurance policy as indicated in the Company designated above, on the basis of the statements and answers

to questions made above and I represent that such statements and answers to questions are true."

The instrument by which the Oldsmobile was substituted for the Chevrolet contains the following statement with respect to the answers given in the application for change:

"I hereby made application for change in automobile insurance policy as indicated on the basis of the statements and answers to questions above made, which I represent as true."

Both the original application and the application for change or substitution contain "No" answers to the question, "Has the applicant been arrested for any offense or convicted in any court?"

The policy itself conditions its validity upon the truth of the statements made in the application. The policy under the section "Conditions" states:

"1. Effect of Policy Acceptance—By acceptance of this policy the named insured agrees that the statements in the Declarations and in any application accepted by the Company, which are offered as an inducement to the Company to issue, continue, or renew this policy, are his agreements or representations and that this policy is issued, continued, or renewed in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance."

The policy also states:

"In reliance upon the Declarations made a part hereof, and the statements made therein, and as to the coverage indicated therein, and for payment of the premium and subject to the limits of liability, exclusions, conditions, definitions, and other terms of their policy, the Company agrees with the named insured as follows:"

The court has been unable to discover any affirmative duty in Arkansas upon an insurance carrier to make an independent investigation to ascertain the truthfulness of the facts as set forth in an insured's application. The following quotation from Pittman v. West American Ins. Co., supra, seems particularly applicable to the instant situation as the validity of the policy in question is conditioned upon the truthfulness of the representations made in the application. At page 409 the court stated:

"The instant case presents virtually the same problem that confronted Judge Collet while he was a District Judge, in the case of Ettman v. Federal Life Ins. Co., D.C.E.D. Mo., 48 F.Supp. 578, the judgment in which was affirmed by this Court in 137 F.2d 121. There, as here, it was contended on behalf of the insured that the misrepresentation relied upon to avoid the policy must be not only material and untrue but also intentionally and fraudulently made. Judge Collet ruled that where a policy is conditioned upon the truth of the representations in an application, a material misrepresentation, although innocently made, will avoid the policy. The policy in that case, like the policy in this, was a Missouri insurance contract conditioned upon the truth of the representations made to procure its issuance.

\* \* \* \* \* \* \*

"In Minich v. M.F.A. Mutual Insurance Co., Mo.App., 325 S.W.2d 56, 57, the Kansas City Court of Appeals stated the law applicable to the furnishing by an applicant for automobile liability insurance of false information, as follows (page 57 of 325 S.W.2d):

" ' "A material misrepresentation made by an applicant for insurance, in reliance on which a policy is issued to him, renders the policy voidable \* \* \*." State Farm Mutual Automobile Insurance Co. v. West, D.C., 149 F.Supp. 289, 305; Gooch v. Motors Insur-

ance Co., Mo.App., 312 S.W.2d 605, 608. This is true whether such misrepresentation be made intentionally or through mistake and in good faith. State Farm Mutual Automobile Insurance Co. v. West, supra; Smith v. American Automobile Insurance Co., 188 Mo.App. 297, 303–304, 175 S.W. 113. An application for a policy of insurance is an offer, intended to be relied upon and to become a part of the contract, when accepted. Absent fraud or mistake one is bound by his written contract and an application as an offer is contractual in nature. Dickinson v. Bankers Life & Casualty Co., Mo.App., Springfield, 283 S.W.2d 658, 662.' "

The court therefore is of the opinion that a material misrepresentation of fact in an application which substantially affects the risk renders the policy voidable at the election of the insurer without respect to the good faith or lack of it on the part of the insured in making representations. This is especially true in the instant action since the policy affirmatively conditions its validity upon the truthfulness of the representations contained in the application.

The plaintiff has established by competent evidence that the insured misrepresented the facts by stating that he had not been arrested or convicted prior to his application to the plaintiff for the issuance of the policy covering the 1959 Chevrolet and the substitution of the Oldsmobile. The materiality and relevancy of these representations to the liability carrier are on their face established. The policy would not have been issued to the deceased had plaintiff, in fact, been apprised of his criminal record and habitual operation of an automobile in an intoxicated condition. Thus, the representations were material and could have been made for no other reason than to mislead the plaintiff.

In accordance with the above, judgment is being entered today holding that the policy is invalid, void and unenforceable and dismissing the counterclaim of the defendant, Roy Dixon, Administrator of the Estate of William K. Dixon, deceased.